## HARDAWAY v. NATIONAL SURETY COMPANY.

### APPEAL FROM THE UNITED STATES CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 44. Argued December 8, 1908.—Decided January 4, 1909.

One who furnishes money and superintends the completion of work under a government contract is not a subcontractor within the meaning of the act of August 13, 1894, c. 280, 28 Stat. 278, and is not entitled to recover a deficit from the surety; and where there is no liability of the contractor there can be no recovery against the surety on the contractor's bond.

The right of the surety on a bond for performance of a contract given under the act of August 13, 1894, c. 280, 28 Stat. 278, to be subro-

gated to the contractor's claim for balances due from the Government, is superior to that of one advancing money to the contractor on assignment of such claim.  *Prairie State Bank* v. *United States,* 164 U. S. 227.

150 Fed. Rep. 465, affirmed.


THE facts are stated in the opinion.


Mr. *Temple Bodley* and *Mr. John Bryce Baskin,* with whom *Mr. J. Manly Foster* and *Mr. W. B. Oliver* were on the brief, for appellants.


Mr. *William W. Watts* and *Mr. Henry Fitts,* with whom *Mr. William J. Griffin* was on the brief, for appellee.


MR. JUSTICE DAY delivered the opinion of the court.


This is an appeal from a decree of the Circuit Court of Appeals for the Sixth Circuit affirming a decree of the Circuit Court of the United States for the Western District of Kentucky, whereby the appellants Hardaway and Prowell were denied the right to recover against the appellee, the National Surety Company, as surety for the faithful performance of a certain contract entered into on September 28, 1899, between the United States and a firm of contractors composed of James E. Willard, Charles L. Cornwell and Joseph Coyne, doing business as Willard & Cornwell. The contract was for the construction of a lock and dam No. 4, in the Black Warrior River, near Tuscaloosa, Alabama. Bond was given in accordance with the requirements of the act of Congress approved August 13, 1894, c. 280, 28 Stat. 278, in order to secure the faithful performance of the contract.

The contract has been kept so far as the United States is concerned, and the surety is relieved from obligation in that respect. The contention in this case involves the construction and application of that condition of the bond, which requires

the contractors to "promptly make full payments to all persons supplying them labor or materials in the prosecution of the work, provided for in said contract."

The question for consideration here is, under the circumstances of the case can Hardaway and Prowell recover upon the bond on their claim as for labor done and material furnished within the terms thereof? The record discloses that the original contractors carried on the work until February 5, 1901, when they made an agreement between themselves and Coyne, by which agreement Coyne was to pay the debts of the firm, to make all future purchases in his own name, and to receive all profits from the contract. After February 5, 1901, Coyne carried on the work. The Government made the checks payable to Willard and Cornwell as before, in accordance with the terms of the contract. On June 2, 1903, Coyne having become financially unable to complete the contract, made a contract in writing with Hardaway and Prowell, which we shall hereinafter set out in full, concerning the work.

Owing to freshets and washouts, as is contended by appellants, it became necessary to do over much of the work, and after its completion appellants made a claim for $32,757.34, interest included to March 1, 1906, and included therein $7,556, being fifteen per cent of the cost expended on the contract with Coyne.

On October 24, 1904, the National Surety Company, appellee, filed a bill in the United States court at Louisville, averring the insolvency of the contractors, and that there would be a loss for labor and material which it would be compelled to pay as surety on the bond, asking for an injunction and the appointment of a receiver. On November 8, 1904, an order was made referring the case to a special master, and providing that parties having claims for labor and materials might prove the same with the right to contest them, and to take the proofs thereof as in equity cases. The order provided that appellee, the surety company, should pay into court, in satisfaction of the claims and costs of action, such a

sum as might be required after the Government payments were exhausted.

The claim of Hardaway and Prowell was filed. A special master allowed the claim. Upon error the Circuit Court disallowed the same, and upon appeal to the Circuit Court of Appeals for the Sixth Circuit the decree was affirmed. 150 Fed. Rep. 465; S. C., 80 C. C. A. 283. The case then came here.

The case turns upon the construction of the contract between Coyne and Hardaway and Prowell. The contract reads as follows:

"State of Alabama, Tuscaloosa County:

"This contract, made this 2nd day of June, 1903, by and between B. H. Hardaway and R. P. Prowell, hereinafter called Hardaway & Prowell, as parties of the first part, and Joseph Coyne, as party of the second part, witnesseth:

"That, whereas, Willard & Cornwell, a firm composed of J. E. Willard, C. R. Cornwell and the said Joseph Coyne, did, heretofore, on to-wit, the — day of —, 1899, enter into a contract with the United States for the construction of lock No. 4 in the Black Warrior River above Tuscaloosa, Alabama, and whereas, shortly after the beginning of the work upon said lock the said Joseph Coyne, by an arrangement between him and his copartners, undertook to complete and finish said lock according to the specifications of the contract of said firm with the United States, and in consideration of such an undertaking acquired the beneficial interest of said firm in said contract and was to receive all amounts paid by the United States in consideration of such contract, and whereas, said lock is still uncompleted, and the said Joseph Coyne cannot, on account of his inability to procure the necessary financial aid, and on account of the disorganization of his labor forces and for various and sundry other reasons, complete and finish the said work in accordance with the said contract, and whereas said contract is a valued asset to the said Joseph Coyne if the said work can be prosecuted to its

completion under the terms of said contract, there being held in reserve by the Government under the terms of said contract about $8,300.00, which has already been earned by said Coyne, and whereas by reason of his said inability to finish said work the said contract is about to be forfeited, and the said Coyne is in imminent danger of losing, not only what profits may be made upon the completion of the work, but the entire reserve fund also retained by the Government, and whereas the said Joseph Coyne for the purpose of preventing the forfeiture of said contract, has made overtures to the said Hardaway & Prowell to take up said work and complete it, and the said Hardaway & Prowell have agreed to do so upon the terms and stipulations hereinafter set forth; now, therefore,

"1. The said Hardaway & Prowell do hereby undertake and agree with the said Joseph Coyne to superintend the completion of the said lock and dam No. 4 and to furnish the necessary finances for the completion thereof, and to put in charge of said work a competent superintendent and to properly organize the work for an energetic prosecution thereof to completion, for which services they are to receive an agreed compensation of 15 per cent upon the total cost of completing said contract, which total cost shall be construed to include all amounts necessarily expended and expenses incurred by Hardaway & Prowell in the completion of said work and all amounts necessarily paid and expenses incurred by them to effect a settlement with and an acceptance of said lock and dam by the United States.

"2. The said Joseph Coyne agrees to the above compensation for Hardaway & Prowell and further agrees to turn over to them entire charge of the completion of said work, and not to interfere with them in any way in the prosecution of said work to completion, and further agrees to turn over to the said Hardaway & Prowell the entire outfit of machinery, tools, etc., which he now has at said lock and dam and the quarries where he is getting stones and to give the use of the same to them for the completion of said work free of any charge.

"3. The said Joseph Coyne further agrees to have all checks for each estimate upon said work forwarded by the Government to the said Hardaway & Prowell and to properly endorse such checks so that they may be collected by Hardaway & Prowell.

"4. It is further agreed by all parties hereto that out of the proceeds of the checks referred to in the next foregoing paragraph the obligations shall be paid preferentially in the following order:

"1. The compensation of the said Hardaway & Prowell as herein agreed for their services.

"2. All moneys advanced by Hardaway & Prowell and used in the prosecution of said work.

"3. All debts necessarily incurred by the said Hardaway & Prowell for the prosecution of said work other than debts for labor and material.

"4. All debts incurred by said Hardaway & Prowell for labor and material or moneys advanced by them in payment for labor or material debts.

"5. The said Joseph Coyne, for the completion of said work and for the securing to the said Hardaway & Prowell all amounts that they shall have to pay on whatever account for the completion of said lock and dam and for a settlement with the United States and acceptance of said lock and dam by the proper authorities of the government, does hereby assign and set over to the said Hardaway & Prowell all his interest in the amount, aggregating as aforesaid about $8,300, retained and now held in reserve by the Government under the said contract for the building of said lock and dam, which shall be applied by the said Hardaway & Prowell in the following order:

"1. To the payment of all debts for labor and material incurred in the building of said lock and dam.

"2. Any balance that may be due to said Hardaway & Prowell for their compensation under this contract.

"3. All other necessary debts incurred in the prosecution

of the said work by Hardaway & Prowell and all amounts including expenses which they shall have to pay in order to effect a settlement with the Government and acceptance by it of said lock and dam.

"4. Any balance to be paid to the said Joseph Coyne.

"6. It is understood and agreed by all parties hereto that if the said Joseph Coyne should at any time fail or be unable to turn over to the said Hardaway & Prowell the checks for estimates on said work properly endorsed so that Hardaway & Prowell can collect them or should fail to secure the collection of them by the said Hardaway & Prowell then the said Hardaway & Prowell shall in that event have the option of annulling said contract and stopping work without notice to the said Joseph Coyne, or to any other parties whomsoever, but in said event the said Hardaway & Prowell shall have a claim against the said Joseph Coyne for all moneys furnished by them and expenses incurred by them upon any account whatsoever in the prosecution of said work, and which shall not have been repaid to them, and for all compensation earned under this contract and not paid to them, and such claim shall be due and payable at once upon their termination of the contract.

"In witness whereof the said parties of the first and second parts have hereunder set their hands and seals in duplicate, this the day and year first above written.

"B. H. HARDAWAY.
"R. P. PROWELL.
"Attest: C. B. VERNER.                "JOSEPH COYNE."

It is said that the master sustained the claim of Hardaway and Prowell upon authority of the case of *Hill* v. *Surety Co.*, 200 U. S. 197. In that case this court held that the obligation of a bond similar to the one here in suit, when construed in the light of the statute requiring its execution, and looking to the protection of those who supply labor and materials provided for in the original contract, was broad enough to in-

.clude laborers who had performed work for a subcontractor who furnished labor or material·which the original contractor had obligated himself to furnish. It was held that in such a case the original contractor who employed a subcontractor who bought materials or hired labor with which to carry out and fulfill the engagement of the original contract for the construction of a public building was thereby supplied with materials and labor for the fulfillment of his contract as effectually as if he had directly hired the labor or bought the materials. We are unable to see how that case controls the one at bar; nor can we reach the conclusion that Hardaway and Prowell were subcontractors furnishing labor or materials to the original contractor, or furnishing such labor or materials to subcontractors which enabled the original contract to be fulfilled, thereby bringing themselves within the principles of the *Hill case*. As we read this contract, Hardaway and Prowell, in view of Coyne's financial and other difficulties, undertook to do certain things in relation thereto. They undertook to superintend the completion of the lock and dam, and to that end to furnish the necessary finances for the completion of the work; for this they were to receive an agreed percentage upon the total cost upon the completion of the contract.

Coyne, on his part, agreed that such compensation should be paid, and agreed to turn over the charge of the work to Hardaway and Prowell and not to interfere therewith in any way, and to give them the use of his outfit and tools, etc., and the quarries from which he was taking stone for the construction of the lock and dam. He agreed to have the checks given by the Government, upon estimates, forwarded to Hardaway and Prowell, and to properly indorse such checks so as to make them collectible by them.

The manner in which Hardaway and Prowell should distribute the money received from such checks is specifically provided in paragraph 4 of the contract. By the fifth paragraph Coyne assigned to Hardaway and Prowell for the completion of the work, and as security to Hardaway and Prowell,

for the amount which they should have to pay on all accounts
for the completion of the work and for a settlement with the
United States and acceptance of said lock and dam by the
proper authorities, all of his interest in $8,300 retained and
held in reserve by the Government under the contract, which
was to be applied by Hardaway and Prowell, 1st, for the pay-
ments of debts for labor and materials; 2d, any balances due
to Hardaway and Prowell for their compensation under the
contract; 3d, all other necessary debts incurred in the prosecu-
tion of the work by Hardaway and Prowell and all amounts
which they shall be obliged to pay in order to effect a settle-
ment with the Government and acceptance by it of said lock
and dam; 4th, any balance to go to Coyne.

The sixth paragraph of the contract made provision for the
possibility that Hardaway and Prowell should not receive
payment of the checks coming from the Government, in which
event they should have the right, at their option, of annulling
the contract and stopping the work. In that contingency they
should have a claim against Coyne for money furnished by
them on account of the prosecution of the work and for all
compensation earned under the contract.

Hardaway and Prowell bound themselves to furnish super-
intendence and to furnish the money to complete the work
which Coyne had undertaken to do. These things were all
that Hardaway and Prowell undertook to do; they were not
subcontractors in our view who undertake to furnish labor and
materials upon a contract with the original contractor. The
extent of the agreement was to furnish funds to complete the
work and to superintend it. For this they were to be paid by
the assignment of the reserve funds in the hands of the Gov-
ernment and the checks or payments under the original con-
tract. There was no undertaking on the part of the surety
company that the contract should be profitable to its principal
or to any other substituted in the contract by assignment or
otherwise. The surety did agree by the terms of the bond that
the original contractors should make full payment to all per-

sons supplying them with labor and materials in the prosecution of the work. This was for the protection of the subcontractors and others supplying such labor and materials for the fulfillment of the original agreement, as we held in the *Hill* case.

We agree with the Circuit Court of Appeals that Coyne entered into no agreement to pay Hardaway and Prowell beyond the assignment of the checks from the Government and the assignment of the reserved $8,300. This is shown by the terms of the agreement read in the light of the circumstances surrounding the parties at the time the contract was made. Coyne had failed to complete the contract and was financially embarrassed. Hardaway and Prowell looked to the assignment of the reserve fund from Coyne and the payments from the Government for their commissions, not to the personal liability of Coyne. Coyne was to be personally liable only in the event that Hardaway and Prowell should fail to realize on the Government checks, as provided in paragraph 6 of the contract. As the claim of Hardaway and Prowell set up in this case must be worked out against the surety because of the liability of the principal in the bond to them, and as there is no such liability either from Willard and Cornwell or Coyne to them, there can be no recovery against the surety on the bond.

Nor do we think that Hardaway and Prowell can complain of the disposition of the $8,300 (exactly $8,161.75), reserved payments under the contract. This sum was paid into court for work done previous to the making of the contract of June 2, 1903. 80 C. C. A. 291. The Circuit Court of Appeals held that this sum, thus paid into court, should be credited upon the $13,261.76, which the surety company had been directed to pay into court for the satisfaction of labor claims which had been proved and allowed in the case. The right of the surety to be subrogated had attached to the fund and was superior to any rights which Hardaway and Prowell had as assignees of Coyne. *Prairie State Bank* v. *United States*, 164 U. S. 227.

We think this was the correct view. We find no error in the decree of the Circuit Court of Appeals, and the same is

*Affirmed.*