SOBRINOS DE EZQUIAGA, Plaintiffs and Appellants, *v.* HEIRS OF FRANK BOND HATCH, Defendants.—TEODORO VIDAL SÁNCHEZ, Intervenor and Appellee.

No. 4087. Argued May 13, 1927.—Decided July 18, 1928.

*M. Martínez Dávila* for the appellants.   *O. B. Frazer* and *R. Castro Fernández* for the appellee.

Mr. Justice Aldrey delivered the opinion of the court.

On May 2, 1925, the firm of Sobrinos de Ezquiaga brought suit against Frank B. Hatch to recover $5,737.28, with legal interest and the costs, alleging that the defendant owed the firm various sums of money as a consequence of the credit given by the plaintiffs to the defendant and for building materials furnished to him, one of them being for an accepted liquidated balance on current account between them and three more in drafts accepted and not paid. On the same day the firm obtained from the court a writ of attachment against property of the defendant to secure the amount sued for and one thousand dollars for interest and costs. After the death of Hatch on the 7th of the same month of May and his substitution in the suit by his widow, Carmen Hernández Hatch, on the 1st of July the marshal attached $6,737.28 of the money which the administrator of the estate of Hatch had on deposit in a bank. On that day judgment was rendered in favor of Sobrinos de Ezquiaga.

On the 21st of the following August Teodoro Vidal Sánchez filed a complaint in intervention against Sobrinos de Ezquiaga and against the heirs of Hatch praying for judgment to the effect that the $6,737.28 attached by Sobrinos de Ezquiaga belonged exclusively to him and alleging that on February 3, 1924, Hatch contracted with The People of Porto Rico for the construction of a building in Puerta de Tierra of this city for the School of Tropical Medicine, the intervenor furnishing security that Hatch would comply with that con-

tract and pay for all of the materials used in the said building as well as for all work done thereon; that Hatch began the work, but on April 12 he became seriously ill and was unable to continue it and remained in that serious condition until May 7 when he died; that when Hatch began the work he entered into a contract with the intervenor whereby the latter agreed to furnish to Hatch from month to month all the money that might be needed for the work and Hatch promised to indorse and deliver to the intervenor in payment of the sums advanced to him all checks drawn in his favor by The People of Porto Rico on the monthly certificates of that work; that when Hatch was found incapacitated to go on with the construction the Commissioner of the Interior demanded that the intervenor, as surety for Hatch, should take charge of the work and complete the building, whereupon the intervenor took charge and proceeded with the work; that from April 1, 1925, to the 30th of that month the intervenor furnished to Hatch and spent on the work $6,450.24; that the sum of $2,816.43 is due to three persons who contracted with Hatch for furnishing stone, material and labor for the plumbing and electric installation from the time when the intervenor took charge of the work until April 30, 1925, for which sum the intervenor is liable as surety and which, added to the previous sum, makes a total of $9,266.67; that on May 1, 1925, the Insular Government drew a check in favor of Hatch for $8,318.33 for work done on the building during the previous month of April, which contract was being performed by the intervenor, and that sum belonged to the intervenor and not to Hatch nor his heirs under the contract with Hatch; that the administrator of the estate of Hatch collected that check and deposited the money in a bank; that Sobrinos de Ezquiaga attached $6,737.28, a part of the amount of that check, although their claim which they sought to secure was not for materials furnished for the building nor for work done thereon, and that the full amount of the government's check belongs to the intervenor.

Sobrinos de Ezquiaga opposed the complaint in intervention and after a trial judgment was rendered to the effect that the $6,737.28 attached by them belonged exclusively to the intervenor; that the attachment levied on it should be dissolved, and that that sum be placed at the free disposal of Vidal. The plaintiffs appealed from that judgment.

The facts proved at the trial are substantially the same as those alleged in the complaint in intervention as also that the amount of the check cashed by the administrator was the only amount entered in the account of the administration when the attachment was levied, therefore the fundamental question is whether the judgment appealed from holding that the sum attached by Sobrinos de Ezquiaga belongs exclusively to intervenor Vidal and consequently should remain at his disposal is correct.

Although in the private contract between Teodoro Vidal and Hatch submitted in evidence the latter promised to deliver to the former all checks drawn by The People of Porto Rico in his favor for work done on the said building in consideration for the furnishing to him by Vidal month by month of all money needed for the building, the fact is that the check drawn by the Insular Government on the first of May in favor of Hatch for the work done during the month of April never came into the possession of Vidal and that after the death of Hatch the money from that check was deposited in a bank to the credit of the administrator of the estate. Vidal had the right under his contract with Hatch that this check be delivered to him by the latter, but until this should be done Hatch continued to be the owner of it and of the money it represented and could collect it notwithstanding his obligation to Vidal. The obligation of Hatch to Vidal to deliver to him the check (read money) remained unfulfilled until such delivery. Therefore, the money represented by that check belonged to Hatch when he died and not to Vidal, becoming later a part of the state represented by the administrator and did not become the property of Vidal by that contract.

Consequently, the money proceeding from that check was not the property of Vidal for the said reason at the time when it was attached by Sobrinos de Ezquiaga. And the fact that Hatch had agreed with Vidal to indorse those checks to him did not convert that money into property of Vidal while it was not indorsed to him, nor create a lien in favor of Vidal to which the attachment levied by Sobrinos de Ezquiaga had to be subject, nor convert Vidal into an owner in equity or assignee thereof. While the check or its amount was not delivered to Vidal he had only a personal action against Hatch for performance of the contract.

Independently of the foregoing the question may be considered under another aspect.

The Civil Code provides as follows:

"Sec. 1171. Obligations may be modified—
"1. By the change of their object or principal conditions.
"2. By substituting the person of the debtor.
"3. By subrogating a third person in the rights of the creditor.

"Sec. 1178. Subrogation shall be presumed—
"1. When a creditor pays another preferred creditor.
"2. When a third person, who is not interested in the obligation, pays with the express or implied approval of the debtor.
"3. When the person who is interested in the fulfillment of the obligation pays, without prejudice to the effects of the confusion with regard to the share pertaining to him."

As we have seen, Hatch had a contract with The People of Porto Rico to construct that building and the contract was guaranteed by Teodoro Vidal as surety of Hatch for that work. Hatch carried on the work until the end of March when as a consequence of an automobile accident he had concussion of the brain which incapacitated him and which caused his death on the 7th of the following May. Due to the stoppage of the work caused by Hatch's illness the Commissioner of the Interior gave notice that surety Vidal should continue the work, otherwise the Department would proceed with it for the account of Vidal. Consequently Vidal took

charge of the building in the beginning of April and expended during that month $9,266.67. Therefore, as Teodoro Vidal had an interest in the performance of the obligation of Hatch, in complying with the contract for Hatch he became subrogated to the rights that accrued in favor of Hatch against The People of Porto Rico as a consequence of the performance of the contract and therefore was entitled to receive the money corresponding to the work done during that month by the surety. For this reason and by virtue of subdivision 3 of section 1171 and subdivision 3 of section 1178 of the said Civil Code the money paid by The People of Porto Rico for the work done during the month of April by a check made payable to Hatch belongs to Vidal as subrogated to the rights of Hatch. The case of *Prairie State Bank* v. *U. S.,* 164 U. S. 227, is similar to the present case, for a person having contracted with the United States Government for the construction of a custom-house and another person having become surety for the contractor for the performance of the contract, the contractor made an agreement with a bank whereby the bank would furnish him with the money necessary for the work and authorized the bank in writing to receive from the United States Government the payment of the amount appropriated for the work. Afterwards the contractor failed to perform the contract and his surety performed the work for him without knowing of the agreement between the bank and the contractor. Then the bank and the contractor's surety brought separate actions to recover the amount retained by the Government and it was held that by the rules of subrogation the surety and not the bank was entitled to receive the money because the former, by making the disbursements, freed the contractor from his obligation for the preformance of which the surety became bound under his bond while the bank was under no such obligation. The case now before us is even stronger than the case cited because in the latter the money of the bank was used in the building while in this case the money claimed by Sobrinos de Ezquiaga

was not disbursed for the construction of the building and is claimed for other reasons. See also *In re Fowble,* 213 Fed. 676; *Hardway* v. *National Surety Co.,* 211 U. S. 552; *Henningsen* v. *U. S. Fidelity & Guaranty Co. of Baltimore,* 208 U. S. 404.

For the reason last stated the judgment appealed from must be affirmed.

Mr. Justice Texidor took no part in the decision of this case.