**THEOBALD–JANSEN ELECTRIC CO. v. P. H. MEYER CO. et al.**

No. 1163.

Circuit Court of Appeals, Tenth Circuit.

April 10, 1935.

F. A. Catron, of Santa Fé, N. M., for appellant.

John F. Simms, of Albuquerque, N. M. (Donald M. Bushnell, of Albuquerque, N. M., on the brief), for appellees.

Before LEWIS and McDERMOTT, Circuit Judges, and KENNEDY, District Judge.

McDERMOTT, Circuit Judge.

P. H. Meyer Company contracted with the United States to install the plumbing,

heating and electrical system in the Veterans' Hospital at Albuquerque, the contractor to furnish all materials and labor therefor. To guarantee the performance of such contract, the Meyer Company as principal and the United States Guarantee Company as surety, executed a bond conditioned on the faithful performance of the contract and the prompt payment "to all persons supplying the principal with labor and materials in the prosecution of the work." The bond was that required by section 270, tit. 40 USCA; and in due season suit was brought by the United States against Meyer Company and its surety, as authorized by that section, for the use and benefit of those claiming to have furnished "labor and materials" to the contractor.

Appellant filed its petition in intervention, as authorized by the same section. The trial court sustained a demurrer to the petition; appellant electing to stand thereon, the petition was dismissed. There being no challenge of the faithful performance of the contract by the United States, we are confronted with but one question: Does the petition allege that appellant furnished "labor and materials" in the prosecution of the work for which it has not been paid? If so, it may recover; if not, it may not, for this is a statutory action on a public bond, and unless the petition states a cause of action for labor and materials furnished in this construction, it is not within the terms of either the statute or the bond; moreover the trial court is without jurisdiction of the controversy, for appellant and the Meyer Company are both citizens of Kentucky.

Appellant would confine our examination of its petition to a statement; in one sentence, in the nature of a conclusion, that the intervenor "furnished the materials and labor necessary for the installation, construction and completion of the electrical work," etc. Appellant puts to one side all the rest of its petition as unnecessary and embarrassing background. But we are not content to rest the case on this fragment of a sentence, since an examination of the entire petition discloses affirmatively that the labor and material bills have been paid and that the object of this suit is to recover from the Meyer Company and its surety the fixed profit appellant was entitled to receive from the Meyer Company, and it in turn from another surety company, over and above the cost of labor and materials covered by the bond.

The petition in intervention alleges that the Meyer Company contracted with the United States "to furnish all the labor and materials and to perform all the work required for and in the installation of the plumbing, heating and electrical systems required by the United States of America in connection with the construction of certain portions of the United States Veterans' Hospital at Albuquerque, New Mexico"; that the bond sued on was given to guarantee the performance of that contract. "That the said contract between the defendant P. H. Meyer Company and United States of America has been fully performed and the work thereunder has been fully completed, approved and accepted by the 'said United States of America, and that final settlement upon said contract with the said defendant was authorized on August 19, 1932."

The petition then alleges:

"That subsequently to the execution of the said contract and bond hereinabove described, and [the] said defendant, P. H. Meyer Company, negotiated with this intervenor, Theobald-Jansen Electric Company, for the furnishing of the necessary labor to construct and install the electrical system and works in the said contract provided for; that in the said negotiations the said defendant P. H. Meyer Company, represented to plaintiff that it had entered into an agreement with the United States Fidelity & Guaranty Company whereunder the said guaranty company was bound to furnish all materials and labor necessary to the construction and completion of the electrical work provided for in the said contract between P. H. Meyer Company and the United States of America; but that the said United States Fidelity & Guaranty Company not being in a position to personally do the said work or furnish the necessary labor or materials therefor, in turn entered into an agreement with the defendant, P. H. Meyer Company, whereunder the latter company should and would furnish the said materials and labor and should fully complete the installation and construction of said electrical system and electrical work in consideration of the payment by the said guaranty company of the cost of all materials and labor, plus 10% calculated as overhead and 10% to be calculated and known as net profit; that intervenor, Theobald-Jansen Electric Company, relying upon the representations so made to it by the said defendant, P. H.

Meyer Company, and the security thereby afforded, and acting in good faith, entered into an agreement with the said defendant, P. H. Meyer Company, whereunder it undertook to install and complete the construction of the said electrical work required by and in conformity with the provisions of the contract with the United States of America, in consideration of the payment to it of one-half of the said calculated overhead of 10% and of one-half of the said 10% net profit, and further to furnish a foreman for said construction work at a cost of $60.00 per week, the salary of said foreman and all labor and materials going into and necessary for the completion of said electrical work to be paid for by the said defendant, P. H. Meyer Company; that in order to confirm the said agreement, the said intervenor and the said defendant, P. H. Meyer Company, executed a written memorandum, in words and figures as follows, to-wit:

"January 28, 1932.
"P. H. Meyer Co., 635 S. Preston St., Louisville, Ky.

"Gentlemen: With reference to our conversation in regard to the completion of the electrical work for the U. S. Veterans Hospital, located at Albuquerque, N. Mexico, and in accordance with the contract you have with the Bonding Company to complete the work on the basis of 10% overhead plus 10% profit, we offer the following proposition.

"We agree to complete the installation of the electrical work as per plans and specifications, also furnish a foreman for $60.00 per week, his salary and all other labor and material to be paid for by your company.

"For the services rendered as above stated we are to receive a compensation consisting of one-half (1/2) of the net profits upon completion of the above job.

"Thanking you for the opportunity of submitting a proposition for this work, and trusting to be favored with your order,
"Yours very truly,
"Theobald-Jansen Electric Co.,
"John Jansen, Treasurer.
"Accepted P. H. Meyer & Company by P. H. Meyer, Jr."

It is then alleged that the cost of the work done was $64,800.22 exclusive of the ten per cent overhead and profit. The suit is not for the $64,800.22 or any part thereof, but is for $6,804.02, one-half the overhead and profit. Nothing could make it clearer that the labor and materials covered by the bond have been paid for and that this suit is for the fixed profit on the job. The petition contains an allegation that the $6,804.02 represents services, labor, and expenses which went into construction.

The reason is now apparent why appellant insists that we must not read the entire petition, but base our decision upon conclusions of fact drawn by the pleader from the facts set out. For an examination of the entire petition discloses, too clearly for argument, that another surety company—the United States Fidelity & Guaranty Company—was obligated to do this work, and to pay therefor; that the Meyer Company contracted with the United States Fidelity & Guaranty Company to take over the work, the United States Fidelity & Guaranty Company to pay all the bills for labor and materials, and in addition twenty per cent for overhead and profit, and that appellant agreed with Meyer Company to take the job over for "one-half of the net profits" plus the salary of a foreman. That appellant did not agree to pay the labor and material bills is apparent from the allegation that the United States Fidelity & Guaranty Company was obligated to pay them, and, stronger still, because the consideration moving to appellant was not cost plus a percentage, but only the salary of a foreman plus a small percentage. Appellant's argument that this was a subcontract ignores the provision in its written contract, and in its allegation of the oral agreement, that the entire consideration moving to appellant was either five or ten per cent of the cost, and not cost plus five or ten per cent. Men do not make contracts by which they agree to furnish labor and materials for ten per cent of the cost thereof.

The Meyer Company contracted with the United States Fidelity & Guaranty Company to complete this work for a compensation or profit measured by a percentage of the cost. Appellant agreed with the Meyer Company to take over the job for "one-half of the net profits" as the written contract provides. The Meyer Company has no claim against its own surety for a profit hoped for but not realized; appellant, tracing its right through Meyer Company, has no greater right. If the rule were otherwise, then a contractor might agree to pay a brother contractor an unlimited compensation for doing the work the contractor was obligated to do, and by this devious method compel his own surety to

pay a fabulous profit not covered by the bond.

■ That profits, even though they be fixed by contract, cannot be recovered on a bond guaranteeing the payment of labor and material bills has long since been settled by the Supreme Court of the United States. In Hardaway v. National Surety Company, 211 U. S. 552, 560, 29 S. Ct. 202, 205, 53 L. Ed. 321, Hardaway agreed to complete a public works contract for the contractor, furnishing the superintendence and financing, for the cost of the labor and materials plus a fifteen per cent profit. Hardaway furnished money and superintendence for the return of the money plus fifteen per cent; appellant furnished only superintendence for five or ten per cent. Hardaway sued on the original contractor's bond for money laid out and the fifteen per cent profit. Recovery was denied, the Supreme Court saying in part:

"Hardaway and Prowell bound themselves to furnish superintendence and to furnish the money to complete the work which Coyne had undertaken to do. These things were all that Hardaway and Prowell undertook to do; they were not subcontractors, in our view, who undertake to furnish labor and materials upon a contract with the original contractor. The extent of the agreement was to furnish funds to complete the work, and to superintend it. For this they were to be paid by the assignment of the reserve funds in the hands of the government and the checks or payments under the original contract. There was no undertaking on the part of the surety company that the contract should be profitable to its principal or to any other substituted in the contract by assignment or otherwise. The surety did agree, by the terms of the bond, that the original contractors should make full payment to all persons supplying them with labor and materials in the prosecution of the work. This was for the protection of the subcontractors and others supplying such labor and materials for the fulfilment of the original agreement, as we held in the Hill Case [200 U. S. 197, 26 S. Ct. 168, 50 L. Ed. 437]."

In United States v. United States Fidelity & Guaranty Co. (D. C. Wyo.) 4 F. Supp. 854, 855, Judge Kennedy in deciding a case which has some aspects in common with this, used the following language entirely apposite here:

"It seems quite evident that the rule of law should be, that a joint adventurer under these circumstances should not be permitted to recover upon a bond given to guarantee the fulfillment of the contract of his coadventurer. The duty of the contractor to fulfill the provisions of his contract are no more imperative than those of one who is jointly interested with him in its success. The obligations are the same, to wit, to see that the contract is fulfilled in every particular before a surety should be compelled to answer for the default. As a matter of fact, the principal contractor might as well be entitled to recover for his own default against his own surety as to permit one jointly interested with him in its success to do so. Such a rule of law would open the door to fraud of a serious type. Counsel have assured us that the books have been searched in vain for a judicial precedent and the court itself has verified their conclusion. Perhaps the lack of precedent arises from the fact that one has never before attempted to enforce his claim upon the bond of the principal contractor who was his joint adventurer."

■ It is well settled that those who supply labor and material to a subcontractor may claim under the contractor's bond. U. S. to Use of Hill v. American Surety Company, 200 U. S. 197, 26 S. Ct. 168, 50 L. Ed. 437; Illinois Surety Co. v. John Davis Co., 244 U. S. 376, and cases cited in Note, page 380, 37 S. Ct. 614, 61 L. Ed. 1206, wherein the Hardaway Case is distinguished because Hardaway furnished no materials or labor. Appellant furnished no labor or materials and all such bills have been paid. It cannot recover unless it can be said to be either a subcontractor or to have performed labor on the job. It was not a subcontractor, as we have seen. It furnished no materials and agreed to furnish none. Neither was it a laborer; it did not contract for wages of a laborer or a superintendent. What it did was to take over the obligation of the Meyer Company to complete the work for one-half the fixed profit. And the bond sued on does not cover profits.

■ The controversy here is between two citizens of Kentucky, probably growing out of the question of whether "one-half of the net profits" in the written contract includes one-half the overhead as the oral agreement is alleged to be. Neither the United States nor the surety company has any interest in the suit, and the court below has no jurisdiction over it.

Affirmed.