UNITED STATES

for use and benefit of

WORLD COMMERCE CORPORATION, S. A.,

Plaintiff

v.

REPUBLIC CONSTRUCTION & MAINTENANCE COMPANY, INC.,

ARANGO & LYONS, S. A., and

MARYLAND CASUALTY COMPANY,

Defendants

Civil No. 27

District Court of the Virgin Islands

Div. of St. Croix at Christiansted

March 4, 1955

*See, also, 129 F. Supp. 651*

MAAS & BAILEY, St. Thomas, Virgin Islands, (William W. Bailey, Esq., of counsel) and DONOVAN, LEISURE, NEWTON & IRVINE, New York City, (Sidney P. Howell, Jr., Esq., of counsel) *for use plantiff*

ALMERIC CHRISTIAN, Esq., St. Croix, Virgin Islands, *for defendants Republic Construction & Maintenance Co., Inc. and Arango & Lyons*

DUDLEY, HOFFMAN & McGOWAN, St. Thomas, Virgin Islands, (George H. T. Dudley, Esq., of counsel) *for defendant Maryland Casualty Co.*

**MOORE,** *Judge*

This matter came on for hearing on November 4, 1954, on a motion by defendant Maryland Casualty Company to be dismissed from the action. The use plaintiff, World Commerce Corporation, S. A. was represented by Maas and Bailey, William W. Bailey, Esquire, of counsel and Donovan, Leisure, Newton & Irvine, Sidney P. Howell, Esquire, of counsel. The defendants Republic Construction & Maintenance Co., Inc., and Arango & Lyons, S. A. were represented by Almeric Christian, Esquire, and defendant Maryland Casualty Co. by Dudley, Hoffman and McGowan, George H. T. Dudley, Esquire, of counsel. Following the hearing on the motion time was granted for the submission of briefs by counsel on the questions of law raised therein.

The use plaintiff, World Commerce Corporation, S. A. (hereinafter referred to as the plaintiff or "World Commerce" is suing for $57,887.73 plus interest from February 11, 1954, as the balance due for supplies, materials and equipment furnished defendants Republic Construction & Maintenance Co., Inc., and Arango & Lyons, S. A. (hereinafter referred to as "Republic" and "Arango" respectively) for the building of two hospitals in St. Croix, Virgin Islands, for the United States Government and pursuant to a written agreement between World Commerce and Republic.

Defendant Maryland Casualty Company (hereinafter referred to as "Maryland") moved to be dismissed from the action on the ground that plaintiff has failed to state a claim upon which relief can be granted as to it, as it appears on the face of the pleadings that:

(a) Plaintiff agreed, by contract of October 4, 1951, to furnish the defendant Republic "a line of credit not exceeding $75,000.00 for shipment of equipment and materials to be purchased from World Commerce Corporation

and sold by the companies listed on Enclosure 1" (see exhibit D.);

(b) Defendant Maryland on September 24, 1951 engaged with defendants Republic to bond them in the sum of $585,000 for performance of contract No. IT-72, dated September 24, 1951, and also, in a separate bond, for payment of "all persons supplying labor and material in the prosecution of the work provided for in said contract" (see exhibit B.);

(c) Neither the performance nor the payment bond covers any claim arising out of the contract of October 4, 1951 between plaintiff and defendants Republic and Arango.

The facts of the case as appear from the allegations of the complaint are as follows:

1. On September 24, 1951, Republic entered into a contract (No. IT-72) for $585,000 with the United States Government (Department of Interior) to construct two hospitals in St. Croix, Virgin Islands: a 60-bed hospital in Christiansted and a 12-bed hospital in Frederiksted. See plaintiff's exhibit A.

2. On September 24, 1951, Republic and Arango, as joint principals, and Maryland Casualty, as surety, executed and delivered to the United States, pursuant to Act of Congress of August 24, 1935, c. 642, § 1, 49 Stat. 793, 40 U.S.C. § 270a (commonly called the Miller Act) a payment bond, No. 90-110643-4, in the penal sum of $585,000 conditioned upon the prompt payment by the principals to all persons supplying labor and material for the prosecution of the work provided for in the contract and any authorized modifications thereof. See plaintiff's exhibit B. (In addition to this payment bond, Maryland also bonded the joint venturers for the performance of their contract.)

3. On October 22, 1951, defendants Republic and Arango entered into a joint venture agreement which pro-

131

vided, in part, that each of them jointly and severally committed themselves to the accomplishment of the above-mentioned construction projects in the Virgin Islands; that each agreed jointly and severally to guarantee all purchases, loans and credit documents made to the joint venture in the interests of the accomplishment of the joint venture projects; and that each was to be "considered jointly responsible to all suppliers and on all notes and letters of credit accomplished in the interest of performing the joint venture projects." It was also agreed that the business of the joint venture would be conducted in the name of Republic Construction and Maintenance Company, Inc. See plaintiff's exhibit C.

4. On October 4, 1951, Republic entered into an agreement with World Commerce, termed a "financing agreement" for the supply of equipment and materials for the project in St. Croix. See plaintiff's exhibit D.

5. Republic did proceed with the construction in St. Croix and performance of the contract was completed.

6. The materials furnished by World Commerce pursuant to the agreement of October 4, 1951, were used by Republic in connection with the construction of the two hospitals and more than 90 days have elapsed since the last of said materials were supplied by World Commerce.

7. By reason of the above-mentioned financing agreement, defendants Republic and Arango owed plaintiff the sum of $72,643.16 on September 1, 1953. On February 11, 1954, defendants paid $16,753.03 to World Commerce in partial payment of its debt, leaving a balance due, with interest thereon, of $57,887.73.

Plaintiff filed this suit against the surety of the contractors by virtue of the provisions of the Miller Act, 40 U.S.C. § 270a, which prescribes that before any contract is awarded to any person for the construction or repair of any public building or public work of the United States,

such person or contractor shall furnish (1) a performance bond for the protection of the United States and (2) a payment bond "for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person."

In compliance with the requirements of this Act, Republic furnished the two bonds specified with the Maryland Casualty Co. as surety in both bonds. The payment bond, the only one involved in this case, recites the provision of the Miller Act as the condition of payment under the bond, to wit:

"The Condition of this Obligation is Such, that whereas the principal entered into a certain contract with the Government numbered and dated as shown above and hereto attached;

"Now Therefore, if the principal shall promptly make payment to all persons supplying labor and material in the prosecution of the work provided for in said contract, and any and all duly authorized modifications of said contract that may hereafter be made, notice of which modifications to the surety being hereby waived, then this obligation to be void; otherwise to remain in full force and virtue."

Plaintiff, World Commerce, sues for recovery or payment under this bond on the theory that it is a supplier of materials such as is protected by the Miller Act and the terms of the bond. Defendant denies that plaintiff is a supplier of materials, asserting that it is evident on the face of the pleadings that plaintiff is a mere lender of credit and not a supplier of materials such as is contemplated and protected by the Miller Act or the condition stipulated in the bond.

■ For the Court to grant defendant's motion to be dismissed it must appear with certainty from the pleadings that World Commerce does not come under the coverage of the Miller Act or the bond issued pursuant thereto. Des Isles v. Evans, 5 Cir., 200 F.2d 614; Kingwood Oil Co. v. Bell, 7 Cir., 204 F.2d 8.

The documents involved in the case were made a part of plaintiff's complaint and cited above as plaintiff's exhibits. In addition, both defendant and plaintiff have submitted affidavits from the principals involved in support of, or in opposition to their respective positions on the motion.

Plaintiff claims protection under the payment bond by virtue of its contract with Republic, its actual relations with Republic and also by virtue of the fact that the surety, Maryland, had knowledge of its arrangements with Republic.

Defendant Maryland denies having any knowledge of the agreement between Republic and plaintiff prior to February, 1953, and asserts that under the instrument of October 4, 1951, plaintiff is not a materialman or a supplier of materials as understood or intended by the Miller Act, supra, plaintiff being a mere financing agent of Republic. Defendant claims that this is so apparent on the face of the pleadings that defendant Maryland must be dismissed since plaintiff cannot qualify under its bond. On the other hand, plaintiff argues that the motion to dismiss cannot be granted at this time for the reason that a number of factual questions have been put in issue by the affidavits filed herein.

The following are the questions raised:

"(1) Is World Commerce a supplier of materials such as comes under the coverage or protection of the Miller Act and the payment bond?

"(2) Did Maryland have knowledge of the nature of and/or terms of the agreement prior to issuing the bond or on or about the time the agreement was actually entered into? And, if so, did that knowledge amount to consent to coverage under the bond in question?

"(3) Can World Commerce be considered an equitable assignee of the manufacturers from whom the materials for Republic were actually bought?"

Plaintiff claims that the answer to each of the above questions is in the affirmative, but that an affirmative answer to any one of them would cause plaintiff to come in under the bond.

With respect to the first of these questions, let us look first at the agreement between World Commerce and then at the affidavits filed herein. The agreement of October 4, 1951, (plaintiff's exhibit D) is entitled a "Financing Agreement between World Commerce Corporation, S.A. and Republic Construction & Maintenance Co., S.A." and provides that:

"1. In consideration of World Commerce furnishing Republic a line of credit not exceeding $75,000 for shipments of equipment and materials to be purchased from World Commerce and sold by companies to be designated in another part of the agreement, but which apparently were never listed, Republic undertakes to honor World Commerce's drafts drawn at 60 days sight, documents on acceptance.

"2. All shipments will be made to the Virgin Islands, but until payment to World Commerce has been made in full, complete right and title to such shipments shall be retained by World Commerce or held to its order.

"3. World Commerce will in no way, nor at any time be held responsible for the fulfillment of Republic's orders by the manufacturers or their agents, or for the condition in which equipment or materials shall be delivered. World Commerce 'as supplier' shall arrange preparation of all shipping documents.

"4. World Commerce will in no way be liable for loss incurred for any delay in connection with the delivery or clearance of any shipment.

"5. Republic authorizes World Commerce to place Marine and War Risk Insurance at prevailing rates to cover the CIF value plus 10% of each shipment. World Commerce's drafts are to include the cost of such insurance together with the amounts of World Commerce's payments to manufacturers and their forwarding agents.

"6. Financing charges are to be calculated as follows:

"a. A flat financing fee of 7½% for the first two months of

135

30 days each or fraction thereof, calculated from the date of each outlay under letters of credit.

"b. Secondary financing fee of 1% for each additional 10 days or fraction thereof commencing with the 61st day.

"c. Letters of credit opened by World Commerce favoring Republic's manufacturers will have four months life and the normal bank charges to be for World Commerce's account.

"d. In case of need, letters of credit will be extended two additional months without charge.

"e. In addition to the foregoing fees, a charge of 1% per month or fraction of the outstanding balances if letters of credit must be extended beyond six months.

"f. The letters of credit will provide for delivery of negotiable shipping documents to Republic against their promissory notes and provisional sales contract.

"7. Provision for World Commerce's remuneration at the above rates shall be made by accordingly increasing the amount of each draft drawn on Republic."

Before analyzing this agreement, it might be mentioned that a subsequent agreement was entered into between World Commerce and Republic on February 24, 1953, for the payment of $112,093.63 then due and owing to World Commerce by the joint venture of Republic and Arango. In this latter agreement Republic acknowledged the debt in the foregoing sum and that "the figure included all unpaid principal and accrued interest to the date of this agreement." Republic thereupon agreed to execute a promissory note to World Commerce in the amount of the total indebtedness of $112,093.63 and Republic further agreed to make a number of transfers and assignments (six altogether) to World Commerce as security for the note.

Taking the agreement on its face alone, World Commerce would appear not to come within the protection of the bond since the agreement by its title and terms seems to be essentially, if not exclusively, a contract for the financing of Republic's purchases of materials and equipment and provisions for payment and furnishing of security by

136

Republic. In the first provision of the contract World Commerce agreed to furnish Republic "a line of credit". The credit thus furnished or afforded Republic was to be used for the purchase of materials and equipment "from" or "through" World Commerce. Whether the purchases were made directly from World Commerce or merely made through World Commerce is controverted by the affidavits of Carl D. Ross, the Panama manager of World Commerce Corporation, and Leonard F. Butler, the New York export manager of World Commerce, for plaintiff, and the affidavits of Clay D. Randell, the Panama agent of Maryland Casualty Company, and of Paul S. Rupert, the president of Republic, as well as the deposition of Henrique Gerardo Arango, of Arango and Lyons, S. A. on behalf of defendant. Plaintiff claims that the purchases by Republic were made directly from World Commerce, who upon receipt of Republic's purchase orders acquired the materials specified from the appropriate manufacturers, paying for them by letters of credit established by plaintiff. World Commerce maintains that the fact that it had to secure the supplies ordered by Republic from the manufacturers agreed upon is immaterial. Maryland, on the other hand, claims, on the strength of the affidavit of the president of Republic, that Republic placed its own orders, merely sending a copy of the said orders to World Commerce and directing World Commerce to pay the suppliers through letters of credit established by World Commerce for the benefit of Republic and for which service Republic was to pay over and above the cost of the goods. Further, Maryland also contends that such orders as might have been placed by World Commerce were placed with the manufacturers for Republic's account and on Republic's responsibility. Maryland also asserts that it is immaterial that the money was delivered direct to the materialmen by World Commerce instead of to Republic for the material-

men. In order to determine whether World Commerce in its relations with Republic was a "supplier of materials" it is material to the case which of these two types of transactions was actually carried on, and since this issue clearly cannot be determined from the pleadings and affidavits, evidence will need to be taken thereon.

The subsidiary provisions of the contract regarding financing charges and the exclusion of World Commerce from liability for delays in delivery, or condition of the goods on arrival also indicate that World Commerce was a financing agent of Republic rather than a supplier, since it was undertaking none of the risks or warranties of a supplier and, as stated in the contract, would not be responsible "as to the fulfillment of Republic's orders by the manufacturers or their agents." By the terms of the agreement World Commerce retained responsibility only for the furnishing of credit for which it was to be expressly compensated in addition to and separate from the cost of the goods and the cost of transportation and insurance.

Contending that the agreement between World Commerce and Republic is merely a financing agreement, counsel for Maryland asserts that financing arrangements are outside the purview or protection of the Miller Act and cites the following cases, *inter alia*, in support of this contention: United States, to Use of Fidelity Nat. Bank v. Rundle, 9 Cir., 107 Fed. 227; Hardaway & Prowell v. National Surety Co., 6 Cir., 150 Fed. 465, affirmed 211 U.S. 552, 29 S. Ct. 202, 53 L. Ed. 321; United States for Use and Benefit of Dorfman v. Standard Surety & Cas. Co., D.C., 37 F.Supp. 323. However, since the supporting affidavits filed by counsel for both parties raise a number of controverted questions bearing on this issue, this question of law need not be explored at this time.

On the second question as to whether Maryland is estopped from disclaiming liability to World Commerce

under its bond, there is considerable conflict in the affidavits as to whether or not Maryland had knowledge of the nature of and/or the terms of the agreement between World Commerce and Republic and could therefore be held to be estopped.

While plaintiff claims that Maryland had full knowledge of its proposed arrangements with Republic prior to the entry of World Commerce into the contract, and that Maryland's agent in Panama, Clay D. Randell, participated in the negotiations between plaintiff and Republic to the extent of assuring plaintiff of protection under the bond, defendant Maryland denies all of this. Maryland not only denies that its representative in Panama took part in the negotiations or made any such representations, but also denies having any knowledge whatsoever of the arrangements between World Commerce and Republic before November 1952, and that it was not until February 1953 that it became familiar with the exact nature of the agreement between World Commerce and Republic. Consequently, Maryland also denies that it was on the strength of any arrangement between World Commerce and Republic that it bonded Republic. It is, however, quite possible that World Commerce did rely on the security of Maryland's bond in furnishing such extensive credit to Republic, yet if plaintiff so relied without any inducement from or representations by Maryland or without Maryland's knowledge of the arrangement, then Maryland is not estopped to deny recovery by World Commerce on its bond, merely because World Commerce relied on the bond to its detriment. This being a question of fact which is in issue it can only be determined upon a trial of the issue.

World Commerce next contends that when it paid the materialmen who supplied the materials needed by Republic under an arrangement whereby the materialmen knew that their products were for Republic in St. Croix,

139

to whom they were at all times consigned, the materialmen, by accepting payment from plaintiff rather than their consignee, effected an equitable assignment of their claims under the payment bond. Since the purpose of the bond is to guarantee the payment of "persons supplying labor and materials", World Commerce argues that when it advanced payment to the manufacturers with their acquiescence in the arrangement, World Commerce stepped into the shoes of the materialmen in so far as their claims against the bond are concerned, or in other words it became an equitable assignee of the claims of the manufacturers. This contention of the creation of an equitable assignment from the manufacturers in favor of World Commerce involves points of law which cannot be determined until the facts upon which it is based have been established by proof.

The number of controverted questions posed by the affidavits supporting and opposing the motion to dismiss and raised by the briefs indicate that there are considerable factual issues involved which can be resolved only upon a trial. Defendant Maryland argues that this is immaterial since, on the face of plaintiff's agreement with Republic, plaintiff is outside the protection of the bond. The Court is, however, of the opinion that the true nature of plaintiff's business and arrangements with Republic are not clearly established by the pleadings, exhibits and affidavits which are before the Court, and that, therefore, plaintiff must be given an opportunity to prove its case on the merits, and on any of the three theories propounded by plaintiff, to wit: (1) that plaintiff is a supplier of materials; (2) that defendant Maryland is estopped to deny liability to plaintiff on its payment bond; and (3) that plaintiff is an equitable assignee of the manufacturers.

The courts have ruled time and again that " 'a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be

entitled to no relief under any state of facts which could be proved in support of his claim.' " Des Isles v. Evans, 5 Cir., 200 F.2d 614, 615. See also the case of Kingwood Oil Co. v. Bell, 7 Cir., 204 F.2d 8, 13, where the court said: "No matter how likely it may seem that a plaintiff may be unable to prove his case, he is entitled, upon averring a claim, to an opportunity to prove it."

It cannot be said with certainty in the case before us that under no set of facts or circumstances which might be proved by plaintiff that plaintiff would not be entitled to relief. Therefore, it is the opinion of the Court that defendant's motion to dismiss must be denied.

Order may be drawn in accordance with this opinion.

