**TAYLOR CONSTRUCTION INC., in the name of the United States of America, Plaintiff–Appellee,**

v.

**ABT SERVICE CORPORATION INC., a Utah Corporation, Defendant,**

and

**International Fidelity Insurance Company, Surety, Defendant–Appellant.**

No. 95–35883.

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 8, 1998.

Decided Dec. 21, 1998.

Stephen J. Blaser, Blaser, Sorensen, and Hansen, Blackfoot, Idaho, for defendant-appellant.

Phillip S. Oberrecht and Robert B. White, Hall, Farley, Oberrecht & Blanton, Boise, Idaho, for plaintiff-appellee.

Before: FERGUSON, BOOCHEVER, and REINHARDT, Circuit Judges.

FERGUSON, Circuit Judge:

In this case, a Miller Act surety failed to pay a subcontractor the entire amount due under the bonded subcontract claiming that the Miller Act imposes no duty to pay the subcontractor the amount in the subcontract's savings clause. The district court disagreed, granting summary judgment against the surety and ordering it to pay the entire amount due under the contract, including under the savings clause. We now affirm because the Miller Act clearly requires a surety to pay the entire amount due under the contract when the prime contractor defaults.

## I. BACKGROUND

ABT Service Corporation was the prime contractor on a project at the Idaho National Engineering Laboratory. Pursuant to the Miller Act, 40 U.S.C. §§ 270a-f, defendant International Fidelity Insurance Company issued a payment bond to the prime contractor. The dispute here arises from the surety company's failure to pay under the Miller Act payment bond.

On April 2, 1992, ABT Service Corporation entered into a subcontract with plaintiff Taylor Construction (Taylor) for Taylor to perform the excavating, utility digging, and foundation work for the project. The subcontract provided that Taylor would be reimbursed for its material, labor, and equipment. What has made this subcontract the center of this appeal is the "savings" provision. The parties agreed in the subcontract as follows:

FOR THE SUM OF: TOTAL CONTRACT AMOUNT SHALL NOT EXCEED $150,000.00 ANY SAVINGS REALIZED IN THIS .WORK SHALL BE DIVIDED EVENLY BETWEEN THE CONTRACTOR [ABT] AND THE SUBCONTRACTOR [Taylor Construction].

Taylor Construction described the savings clause as an "incentive clause" that would spur fast performance.

Taylor Construction performed the work required in the subcontract and, on a daily basis, submitted to the prime contractor's superintendent "charge sheets" itemizing the materials, labor, and equipment used on that day. In total, Taylor billed the prime $45,594 but reduced that to $42,819 after an agreed-upon adjustment, and the prime paid Taylor accordingly. The prime contractor did not, however, pay Taylor the amount required under the subcontract's savings clause—$41,405.68.[1]

During the performance of the subcontract, the prime contractor requested Taylor perform some additional unspecified work under a change order. Although Taylor completed the work under that order, the prime did not pay Taylor the $498.00 required under the order. The prime claimed that it did not pay Taylor because Taylor left four hours of sidewalk work uncompleted in the performance of the entire subcontract (not the change order).

On June 16, 1993, Taylor Construction filed this action against both the prime contractor and the surety. Taylor alleged that the prime contractor breached the subcontract and that the surety company thus owed it the amount due under the payment bond. After Taylor moved for summary judgment, the district court granted Taylor's motion on all issues except attorneys fees from surety. The court found that both the surety

and the prime owed Taylor the $498 on the change order because the prime was not entitled unilaterally to offset that order based on Taylor's not completing the main project. Furthermore, the court found that the prime owed Taylor $41,405.68 under the savings clause of the contract[2] and that the surety owed Taylor that amount because it had bonded the prime contractor under the Miller Act for the subcontract with Taylor. The court found also that both parties owed Taylor prejudgment interest but that only the prime contractor owed Taylor attorneys fees because attorneys fees are not recoverable against a Miller Act surety.

The surety appealed, but the prime did not.

## II. STANDARD OF REVIEW

This court reviews a grant of summary judgment de novo. *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir.1997). There are no genuine issues of material fact here, so this court must determine whether the district court correctly applied the relevant substantive law. *Id.*

## III. DISCUSSION

### A. Savings Clause

The surety's main contention on appeal is that it is not required to pay Taylor under the subcontract's savings clause because the amount owed under that clause is not "labor" or "material" and the Miller Act (the Act) requires payment by the surety only when the prime contractor fails to pay for labor or material. The surety's reading of the Miller Act is wrong based on both the plain language of the Act and well-established precedent, and we accordingly affirm

---

1. As interpreted by the district court, the savings clause called for splitting the savings under $150,000. With the prime contractor paying $42,820 (the prime overpaid Taylor by $1), the gross savings was $107,180. Dividing that in half would result in $53,590 for each party. Because the prime at times had furnished Taylor with a laborer, the parties agreed to reduce that amount by $12,184.32. This subtraction resulted in an amount owed under the savings clause of $41,405.68.

2. The prime contractor had argued before the district court that the $150,000 mentioned in the contract was not the measuring-stick for the savings clause but rather was a "not-to-exceed amount"; the prime contended that the savings clause amount was contained in a budget not included in the contract. The district court rejected this contention because the subcontract contained an integration clause preventing the parties from varying the terms of the contract with writings outside the contract. That ruling is not the subject of this appeal.

the district court's summary judgment in favor of Taylor.

The Miller Act provides that before a contract exceeding $25,000 for the construction of any federal public work is awarded, the contractor must secure a payment bond "for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract. . . ." 40 U.S.C. § 270a(a)(2). The Act also provides that any person "who has furnished labor or material in the prosecution of the work provided for in such contract . . . and who has not been *paid in full* therefor . . . shall have the right to sue on such payment bond . . . for the *sum or sums justly due him* . . . ." 40 U.S.C. § 270b(a) (emphasis added).

■■■ The policy behind the Act is "to provide a surety who, by force of the Act, must make good the obligations of a defaulting contractor to his suppliers of labor and material." *United States ex rel. Sherman v. Carter*, 353 U.S. 210, 217, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957). Because the Act is remedial in that the common law did not allow a lien on federal contracts, the Act "is entitled to a liberal construction and application in order . . . to protect those whose labor and materials go into public projects." *Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins Co.*, 322 U.S. 102, 107, 64 S.Ct. 890, 88 L.Ed. 1163 (1944).

The plain language of the Act provides the quickest answer to the question posed here because it is clear from the face of the Act that Taylor can recover from the surety. Taylor is indisputably entitled to bring suit to recover under the payment bond because Taylor "furnished labor or material in the prosecution of the work." 40 U.S.C. § 270b(a). What is disputed here is not who can recover but rather *what* Taylor Construction can recover. Clearly, the "who" is limited to those supplying "labor or material." The "what" is not so limited and is described simply as "sums justly due." "Sums justly due" refers back to the term "paid in full" contained in the earlier part of that same sentence. Thus, a provider of labor or materials is entitled to all sums justly due, meaning that the provider is entitled to be paid in full under the subcontract. Only that reading makes sense of the entirety of the Act. *See United States v. Nordic*

*Village, Inc.*, 503 U.S. 30, 36, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) ("[A] statute must, if possible, be construed in such fashion that every word has some operative effect."). Thus, under the plain language of the Act, Taylor Construction, a provider of labor and materials, can recover all sums justly due under the contract and is entitled to be paid in full.

Long-standing precedent confirms that "sums justly due" means the sums due the party under the bonded contract. In *United States ex rel. Sherman v. Carter*, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957), the trustees of the health and welfare fund established for the benefit of the laborers on a federal contract sued the surety because the contractor failed to pay the contributions to the health and welfare fund required by the collective-bargaining agreement. *Id.* at 212–13, 77 S.Ct. 793. The Court ruled that the surety was liable because payments to the health and welfare fund were "a part of the compensation for the work to be done by [the] employees"; thus, "[n]ot until the required contributions have been made will [the] employees have been 'paid in full' for their labor in accordance with the collective-bargaining agreements." *Id.* at 217–18, 77 S.Ct. 793. Although *Carter* involves facts different from those involved here, the Court's method of analysis—looking to the underlying contract to determine what one providing "labor or materials" can recover—is controlling.

The Ninth Circuit has consistently followed that method and used the underlying bonded subcontract as the measure of recovery in Miller Act cases. *See Colvin v. United States ex rel. Magini Leasing & Contracting*, 549 F.2d 1338, 1342 (9th Cir.1977) (basing recovery on "the terms of the contract"); *United States ex rel. A.V. DeBlasio Construction Inc. v. Mountain States Construction Co.*, 588 F.2d 259, 262–63 (9th Cir. 1978) (approving award of damages because it was in accordance with the provisions of the contract). Sources from other authorities show there is no doubt that under the Miller Act recovery for work performed under the subcontract is the amount due under the subcontract. *See United States ex rel.*

*Lincoln Elec. Prods. Co. v. Greene Elec. Serv.,* 379 F.2d 207, 210 (2d Cir.1967) ("the amount 'justly due' ... is determined by the contract price"); *Geis Constr. Co. v. United States ex rel. Tom Igel Co.,* 243 F.2d 568, 569 (6th Cir.1957) (affirming judgment for amount due under contract); 2 Ralph C. Nash, Jr. & John Cibinic, Jr., *Federal Procurement Law* 1776 (3d ed. 1980) ("When the claimant is suing for compensation for work performed pursuant to the contract, the proper measure of recovery is the unpaid contract price....").

Extensive discussion of the Miller Act and contract provisions that include profits appears in *Price v. H.L. Coble Construction Co.,* 317 F.2d 312 (5th Cir.1963). In that case, the Fifth Circuit discussed the Miller Act [3] in the context of a subcontract much like the one at issue here. Under that subcontract, Price, the roofer, was to be paid by Bessemer, the prime contractor, the difference between the cost per unit and $300; if the cost per unit wound up being more than $300, Price would receive no additional payment. *Id.* at 313–14. Faced with the same argument presented here on appeal, the Fifth Circuit concluded that profits were recoverable under the Miller Act because "the amount of [ ] recovery is measured by the contract sum, and of course the contract sum includes the contractor's profit. If such a contractor cannot include a profit, he would not be in business." *Id.* at 317. The court cited precedent from the D.C. Circuit that stated that under the Heard Act (the predecessor to the Miller Act) "it had never previously been questioned in any federal court but that the surety must respond 'in accordance with the terms of the contract.' " [4] *Id.* at 318 (citing *Royal Indem. Co. v. Woodbury Granite Co.,* 101 F.2d 689, 692 (D.C.Cir. 1938)). The same is true for the Miller Act even when the contract includes a provision for profit sharing. *Id.; see also United*

*States ex rel. Woodington Elec. Co. v. United Pac. Ins. Co.,* 545 F.2d 1381, 1383 (4th Cir. 1976) (stating that where the subcontract includes a profit sharing provision, "[a] surety is liable for the subcontract price, unless it was fixed by collusion, fraud, or overreaching. Consequently, the surety is obligated to pay the compensation to which the parties have agreed, although this amount exceeds the cost of labor, materials, and overhead.") (internal citations omitted); *United States ex rel. Reichenbach v. Montgomery,* 155 F.Supp. 384, 386 (E.D.Pa.1957) ("The surety's contention that it is entitled to judgment because the subcontract ... included subcontractors' profit misconceives both the language and the purpose of the Miller Act.... The subcontract fixed the fair, reasonable value of the labor and material furnished ... and to the recovery of that value the subcontractors are entitled."), *aff'd,* 253 F.2d 427 (3d Cir.1958).

Under the Miller Act, Taylor Construction can recover the agreed upon amount described by the savings clause—$41,405.68. The district court's conclusion to that effect is affirmed.

## B. The Change Order

■ The other issue decided on the summary judgment motion was whether the surety was responsible for the amount due under the change order. The district court ruled that the surety was liable, and we affirm.

Here, the prime contractor failed to pay Taylor on the change order because Taylor failed to complete the final four hours of work on the subcontract. It is undisputed, however, that Taylor did complete the work required under the change order, and therefore Taylor was entitled to receive $498 for the unpaid invoice. If the prime contractor

---

3. The case was actually brought under the Alabama version of the Miller Act, but the court based its reasoning on Miller Act precedent because the parties agreed that "the Alabama statute was patterned upon the Miller Act," "the purposes of the Miller Act and the Alabama statute are identical," and "they should be interpreted in the same manner." *Price,* 317 F.2d at 315.

4. The Fifth Circuit discussed one case in which it had been written that profits would be excluded from recovery even if provided for under the contract. *See Theobald–Jansen Elec. Co. v. P.H. Meyer Co.,* 77 F.2d 27 (10th Cir.1935). *Theobald–Jansen* was correctly distinguished in *Price* because Theobald–Jansen Electric Company was not a provider of labor or materials so it was not a subcontractor covered under the Miller Act. *Price,* 317 F.2d at 319 n. 8.

had a counterclaim for failure to complete the contract, either it or the surety should have raised the claim in the district court and would have been required to prove that the cost of completing the contract exceeded the agreed cost for labor and materials for that work under the subcontract. Neither the prime nor the surety raised such a counterclaim.

AFFIRMED.