UNITED STATES, for Use and Benefit of DORFMAN et al. v. STANDARD SURETY & CASUALTY CO. OF NEW YORK et al.

Civ. No. 6-467.

District Court, S. D. New York.

March 5, 1941.

---

[2] See In re De Luxe Oil Co., D.C., 36 F. Supp. 287, in which the same conclusion is reached.

324

See, also, 1 F.R.D. 239.

Samuel Shapiro, of New York City, for use-plaintiffs Irving Dorfman and Barney Shapoff.

Maxwell Lehrhaupt, of New York City, for use-plaintiff Hyman Kenoff.

Max E. Greenberg, of New York City, for defendant Standard Surety & Casualty Co. of New York.

Barr, Bennett & Fullen, of New York City (Lawrence J. Lieberman, of New York City, of counsel), for defendant Herman Katz.

BYERS, District Judge.

This is an action upon a bond required by 40 U.S.C.A. § 270a(2), namely, a payment bond "for the protection of all persons supplying labor and material in the prosecution of the work * * *", namely, that specified in a contract entered into by Reuben Malkin, Inc., with the United States Government, concerning work done at 201 Varick Street (U. S. Appraiser's Stores) New York City.

It sufficiently appears that there was such a contract and that the contractor did not pay in full for the labor involved, and that some resultant liability attached to the defendant Surety Company.

It is necessary to determine the amount remaining unpaid by the contractor, and the persons who are entitled to judgment under the bond, and the amounts due.

The evidence, as a whole, is confused, fragmentary and in some respects quite difficult of acceptance.

The use-plaintiffs are Irving Dorfman and Barney Shapoff, who assert that they were subcontractors as to all the exterior painting, and that they are entitled to recover an alleged unpaid balance owing to them under the said subcontract.

For reasons to be stated, it will be found that they were not subcontractors but co-foremen employed by the contractor, and their recovery must be limited to the amount remaining unpaid of their wages.

By order of January 15, 1941, Hyman Kenoff was permitted to intervene as a use-plaintiff, and he asserts that he was employed by Dorfman and Shapoff as a painter on the job, and that $131.25 of his wages remains unpaid.

It was stipulated on the trial that that is the correct amount of his claim.

The original complaint, filed December 8, 1939, named the Surety Company and Herman Katz as defendants and, in addition to the matters above stated and for a second cause of action, alleged that during the prosecution of the contract the defendant Katz loaned to the contractor Malkin the sum of $545, which was delivered to Dorfman and Shapoff, and by them applied toward the pay rolls of their laborers, and that the said $545 was included in the sum of $1,033 alleged in the first cause to have been paid by the contractor; that Katz had instituted an action to recover the $545 from Dorfman and Shapoff, and that they deny having done the borrowing, and that they were in doubt as to whether they were liable to Katz for any part of the moneys advanced by him.

On December 26, 1939, Katz filed a cross-complaint and answer, in which it was asserted that the said $545 was loaned by him to Dorfman and Shapoff to be used for the payment of labor; and for his cross-complaint against the Surety Company, the Malkin contract was alleged, and that during the months of April, May and July, 1939, Katz, at the joint request of Malkin and Dorfman and Shapoff, "caused to be performed certain labor and services consisting of painting in connection with" the said contract, of the reasonable price and value of $545, and judgment was sought against the defendant Surety Company for that sum.

There was subsequent procedural activity in great volume, and to little apparent purpose, none of which seems to require present recital.

It also appears that certain laborers, who were not paid, have filed labor claims with the Federal Works Agency for wages owing to them, namely:

Eric Holm ...................... $27.50
Karl Jensen .................... 23.50
Charles Jensen ................. 23.50
Eddie Schnitzer................. 85.00

as the result of which, the total sum of $159.50 was withheld from the final payment on the Malkin contract, and apparently those sums are now in the custody of the Comptroller General for the benefit of the claimants. While those sums were not paid by the contractor, they have been earmarked for the workmen, and are available to them.

It seems that the exterior painting embraced within the Malkin contract was done during a period of seven weeks, commencing about April 17, 1939, and terminating on or about June 10, 1939.

Dorfman and Shapoff have failed to satisfy this court that their status was that of subcontractors, for the following reasons:

(a) The alleged subcontract (their Exhibit 1) is dated April 17, 1939, and purports to constitute an agreement between Malkin and Dorfman and Shapoff for all the said exterior painting; Dorfman and Shapoff agreed to furnish all labor and Malkin agreed to furnish all "equipment, material and compensation" therefor, and Malkin agreed to pay $3,200 as the contract price, thirty per cent. upon the "Inspector's approval" and the balance upon receipt of his check from the Government in final payment.

In other words, Malkin was to pay for all labor and material and employees' compensation, and Dorfman and Shapoff were to assume no financial responsibility. To call this a subcontract would not make it such.

A statement of the judicial understanding of a true subcontract will be found in the opinion of Mr. Justice Day in United States to Use of Hill v. American Surety Company, 200 U.S. 197, at 205, 26 S.Ct. 168, at 171, 50 L.Ed. 437: "If the contractor sees fit to let the work to a subcontractor, who employs labor and buys materials which are used to carry out and fulfil the engagement of the original contract * * * he is thereby supplied with the materials and labor for the fulfilment of his engagement as effectually as he would have been had he directly hired the labor or bought the materials."

The only labor that Malkin contracted for with Dorfman and Shapoff was their own; Malkin was to furnish everything else, and Dorfman testified that he and Shapoff did not put any money into the job and that Malkin was to pay for the labor, materials and equipment. This obviously left nothing for Dorfman and Shapoff to furnish but their own services.

In the plaintiffs' original bill of particulars, they listed the laborers employed on the job and the rate of compensation per day. Included therein were the four men above-named, who presented their claims to the Government; their letters request that action be taken against Malkin, and no mention is made that any one of them was ever employed by Dorfman and Shapoff.

(b) Dorfman made a claim for compensation, claiming that he had suffered an injury on the job about May 3d, and he stated on the blank provided by the Department of Labor of the State of New York, in connection with case No. 39203763, that he was injured moving a scaffold; that his employer was Reuben Malkin, and that he was a painter earning $10.50 a day, and that he was a time worker, and that he had sprained the muscles of his neck and back in moving the ropes of the scaffold on the roof of the building 201 Varick Street, New York.

Of course that was incompatible with any subcontractual status on his part at that time.

(c) Malkin testified that the so-called contract was not executed on the date that it bears, although it purports to have been verified before a notary public on April 17, 1939. He said that the writing was not signed until two or three months after the work had been completed. So much of his testimony is accepted.

He went on to relate that he had a kind of verbal understanding with these men, that he was to pay them $3,000 and to split the profits with them, namely, the difference between the actual outlay for labor and materials, and that sum.

That kind of arrangement is difficult to reconcile with the evidence in the case, such as it is.

The contractor went into bankruptcy in the month of January, 1940, which may not be an entirely unrelated incident, so far as this and other elements of his testimony are concerned.

Malkin professed an inability to produce any records but his explanation for their absence is less than convincing. He said that he kept them all in an automobile and that he had to surrender the latter to the company which financed its purchase, and that the last he could recall of the whereabouts of those records was that they were in that car.

He is not the first bankrupt who has so accounted for the loss of books, papers and records.

In the face of the unsatisfactory showing made for all parties, it is necessary to endeavor to reconstruct some kind of financial statement which will indicate approximately the contractual undertaking of Malkin to pay his workmen; the amount which was paid, and the balance remaining. The best that can be done is to note the plaintiffs' tabulation of the sum contracted to be paid to the workmen named in the bill of particulars filed on January 25, 1940, namely, $1,723. The greatest number of days involved in that total is thirty, credited to Jack Beard. If to that sum there be added, for Dorfman and Shapoff, thirty days' compensation at $10.50 a day, or $630 for both, the total is $2,353.

To the foregoing there should be added the wages agreed to have been earned by Kenoff, although he was not listed in the bill of particulars, namely, $131.25, making a total of $2,484.25 ostensibly payable by Malkin for labor in connection with the exterior painting portion of his contract.

The total of payments, according to the plaintiffs' supplemental bill of particulars, is $1,033.

The foregoing is thought to include $300 advanced by Katz on April 20th and May 5th, but not to include $245 advanced by him on July 28th; therefore the latter sum should be included in the total payments, making $1,278 in all.

Subtracting this from $2,484.25, the above total, leaves an apparent balance unpaid of $1,206.25. Of the foregoing, there is being held in the office of the Comptroller General, for the benefit of the four workmen above-referred to, and therefore not payable by the Surety Company, the sum of $159.50. Subtracting that from $1,206.25 leaves $1,046.75.

With regard to the Katz claim, the court is reluctantly forced to conclude that he is without remedy in this action. See Hardaway & Prowell v. National Surety Company, 6 Cir., 150 F. 465; United States v. Rundle, 9 Cir., 107 F. 227, 52 L.R.A. 505; First National Bank of Dothan v. American Surety Company, 5 Cir., 53 F.2d 746, at 748.

Katz is a creditor of Malkin and, while his money was used to meet the pay roll on this job, the statute in question has not thus far been construed so as to constitute him one who has "furnished labor or material in the prosecution of the work". 40 U.S.C.A. § 270b.

It also appears that Katz is an assignee of Dorfman and Shapoff but nothing can be accorded to him in that guise, since the assignment was not operative until Dorfman and Shapoff had received $2,167, and as that sum is not to be awarded to them, there is nothing for Katz to take as assignee.

The obligation of the defendant Surety Company arises upon a contract and the court is not at liberty to enlarge it because Katz's position involves a very evident hardship. He was induced to lend this money at the instance of Beard, and he relied upon the assurance of Malkin that reimbursement would be made out of the proceeds of the contract, and it is Malkin to whom he must look for the breach of that undertaking.

Something should be said about Malkin's testimony concerning the amounts which he paid for labor on this branch of his contract, not only to Dorfman and Shapoff, but in order to make good the deficiencies

in their work. He says that he paid them about $1,900, and that he had to pay additional sums to others in order that the work might pass inspection. As to all of these items he professed to have no records whatever, and his testimony on this branch of the case was so unsatisfactory that no reliance can be placed upon this aspect of it.

The apparent balance found to remain unpaid or unsecured is $1,046.75, but the proof does not warrant judgment against the defendant Surety Company for that amount, because the use-plaintiffs are at most entitled to recover their seven weeks' wages as stated. The judgment therefore should direct payments as follows:

To use-plaintiff Kenoff.......... $131.25
To use-plaintiff Dorfman......... 315.00
To use-plaintiff Shapoff.......... 315.00
                                   -------
     Total ..................... $761.25

While the workmen whose pay is or was in the Comptroller General's office are not parties to this suit, I think the defendant Surety Company should assume some responsibility for helping them to get their money, since governmental process in such matters is proverbially complex and halting. Perhaps the entry of judgment can be deferred until those funds have been collected by the men who are entitled to receive them.

Settle findings and judgment.