Emery E. **FAGER** and Max J. Friesen, Partners, Doing business as Fager & Friesen Insurance Agency, Respondents,

v.

J. W. **STORMS** and Storms-Green Construction Company, Appellants.

No. 23872.

Kansas City Court of Appeals.

Missouri.

Oct. 5, 1964.

Donald B. Clark, Campbell & Clark, Kansas City, for appellants.

Robert D. Youle, Daniel M. Dibble, Lathrop, Righter, Gordon & Parker, Kansas City, for respondents.

SAMUEL A. DEW, Special Commissioner.

The plaintiffs sued to recover damages for conversion of certain road machinery. Upon trial without a jury, the court gave judgment for the plaintiffs for $10,000. Defendants have appealed.

This case is related to two companion cases with which it was tried, but not consolidated. They are: Kansas State Bank v. Storms et al., No. 23,873, Mo.App., 382 S.W.2d 805 and State ex rel. for the Use of Fager and Friesen Insurance Company v. Storms-Green Construction Company et al., No. 23,874, Mo.App., 382 S.W.2d 812. A separate judgment was rendered in each of the three cases, separate appeals taken and a single transcript filed in this court. For a more extensive account of the background of the transactions involved in the instant case reference may be had to the case of Kansas State Bank v. Storms et al., supra.

Defendants were prime contractors under a contract with the Highway Commission of Missouri for the construction and preparation of the roadbed to improve Route #67 in St. Francois County, Missouri. They subcontracted to Dale Bloom, a contractor, for that part of the job that required the excavation of rock. He owned and operated heavy road machinery and equipment necessary for that part of the road construction. Due to many unforeseen adversities, Bloom became insolvent with his subcontract far from completion.

Defendants, responsible as prime contractors for completion of the entire contract, entered into a written agreement with Bloom, dated December 26, 1958, to assume the unfinished part of his subcontract, to pay all of his debts incurred thereunder, to employ him as a superintendent on the job, and for Bloom to convey to the defendants thereby the road machinery in question, to be reconveyed to him under certain conditions provided for therein, more particularly noted later in this opinion. The written agreement was never recorded.

The plaintiffs were insurance agents in Overbrook, Kansas. They were partners and were cashier and assistant cashier, respectively, of Kansas State Bank in that town and operated their insurance agency in the quarters of that bank. They had furnished Bloom much of his insurance over the past years, and his overdue account with them for unpaid insurance premiums had accumulated to the amount of $13,831.55. To secure that indebtedness to plaintiffs, Bloom, on January 1, 1959, gave them his note for that amount, secured by a chattel mortgage on certain of the road machinery on the above job site in St. Francois County, Missouri. The note and mortgage were made on the bank's forms designating the Kansas State Bank as payee and mortgagee, but the bank disclaimed any interest in them and promptly assigned them to the plaintiffs. The trial court ruled that the plaintiffs were at all times the true owners of the note and mortgage, which ruling was supported by substantial evidence. The mortgage was thereafter recorded January 17, 1959, in St. Francois County, Missouri, where the property was located and on February 2, 1959, in Douglas County, Kansas, where Bloom resided. The note becoming in default, plaintiffs, on September 11, 1959, demanded possession of the mortgaged property.

Certain parts of the mortgaged machinery and equipment had been seized by the holders of a prior mortgage (Kansas State Bank) and some had been sold by the defendants herein for $5,000 which, it is agreed, was its reasonable market value. Some was still retained by the defendants of the agreed reasonable market value of $5,000. The court found that the defendants had thus converted the mortgaged property to their own use and benefit and that the amount due on the Bloom note held by plaintiffs, with interest, was $10,997.20.

The new working agreement between Bloom and defendants above mentioned, covering the assumption of his subcontract by defendants, purporting on its face to have been executed December 26, 1958 and, therefore, to antedate plaintiffs' mortgage

of January 1, 1959, set forth the conditions and reasons for its execution and its mutual purposes, and thereafter it read as follows:

"3. Second Party hereby sells, assigns and transfers all right, title, interest or equity in and to all construction equipment, parts, supplies or other merchandise which he now has on the job.

\*     \*     \*     \*     \*     \*

"5. When that part of the job heretofore sublet to Second Party has been fully completed, there shall be a final accounting at which time all expenses incurred by First Parties in completing the contract heretofore sublet to Second Party (including all bills which First Parties shall be required to pay that were incurred by Second Party in performing his part of the subcontract) shall then be balanced against all accounts that should be credited to Second Party for the work performed on such sub-contract, after which the surplus, if any, shall be paid to Second Party, and all equipment conveyed to First Parties under the provisions of this contract shall be returned and transferred to Second Party; should such accounting show that First Parties have incurred a loss, then in such event First Parties shall have the right to sell or dispose of all equipment conveyed to them by Second Party under the terms of this agreement, and proceeds from such sale shall be applied to reduce such loss, and the balance of such loss, if any, shall then be an obligation against Second Party".

The plaintiffs firmly contend that the above agreement was by no means a Bill of Sale for the property referred to therein, nor otherwise a conveyance of title thereto, but a mere security device to secure defendants in undertaking the completion of Bloom's unfinished subcontract, and that, further, the Bloom agreement though dated December 26, 1958, was in fact not signed

and executed by the parties until January 4, 1959, subsequent to Bloom's note and mortgage of January 1, 1959 held by the plaintiffs.

Defendants just as vigorously argue that their agreement with Bloom was agreed to and executed on December 26, 1958, as it states; that it was error to permit evidence to the contrary since defendant Horace Green, who signed for defendants, had since died; that the agreement did transfer and assign the Bloom equipment to defendants, including all right, title and interest therein to be used in the completion of the Bloom subcontract and to compensate defendants for assuming Bloom's obligation; that the equipment was not security for the payment of a certain future debt exceeding the value of the property. It is insisted that to constitute the relationship of mortgagor and mortgagee the mortgagor "must retain the ability to recover the property by payment or performance".

The court found that the Bloom agreement with defendants dated December 26, 1958, constituted a security device and not a bill of sale and "did not transfer absolute title to the defendants of any of the equipment described in the mortgage contained in plaintiffs' Exhibit 6". Defendants' first point of error is that the court should have found that Bloom conveyed the property to defendants by his contract of December 26, 1958.

It is obvious that if defendants' construction of their agreement with Bloom dated December 26, 1958 be correct, then such agreement, though unrecorded, would, under the circumstances in evidence, take precedence over plaintiffs' mortgage of January 1, 1959, for want of title vested in Bloom to execute such mortgage. If, however, such unrecorded agreement between defendants and Bloom conveyed no title to the property described to defendants or to anyone, then on January 1, 1959, he would have retained and have vested in him the legal title to the property described in plaintiffs' mortgage and would possess

binding authority to execute the same. Furthermore, the motor vehicles among the property in question were subject to State Motor Vehicle Law and, in fact, could be transferred only under those regulatory statutes with which the evidence shows no compliance. Haynes v. Linder, Mo.App., 323 S.W.2d 505; Section 301.210 RSMo 1949, V.A.M.S. Bloom testified that he never assigned or delivered his vehicle titles to defendants and that he had no intention to convey title to his equipment to the defendants by the mere signing of the agreement; that "this equipment was mine", and that he "figured it was my place to stay there". He did, however, state that the agreement dated December 26, 1958, correctly stated the substance of the understanding between the parties to it.

■ It is said in 14 C.J.S. Chattel Mortgages § 5, p. 584:

"A sale is distinguished from a mortgage in that the former is a transfer of the absolute property in the goods for a price, whereas a mortgage is at most a conditional sale of personal property as security for the payment of a debt or the performance of some other obligation, subject to the condition that on performance title shall revest in the mortgagor. * * * As conducing toward the construction of a transaction as a mortgage rather than as a sale, the courts will consider such facts as * * * that the bill of sale contains or is accompanied by a defeasance, that there is * * * an agreement for a reconveyance, * * * or that there is a continuation of indebtedness on the part of the seller".

The court in Puryear-Meyer Grocer Co. v. Caldwell Bank, Mo.App., 4 S.W.2d 489, 490, said:

"One sure test as to whether a deed is intended as a mortgage is the fact that the debt is not thereby extinguished, but remains in existence. If there is no debt, the instrument cannot be considered as a mortgage; but, if it continues, it is proper to so construe the instrument. Bobb v. Wolff, 148 Mo. 335, 49 S.W. 996; Book v. Beasley, 138 Mo. 455, 40 S.W. 101; Carson v. Lee, 281 Mo. 166, 219 S.W. 629.

"In the case at bar, the instrument under consideration recited the amount of the indebtedness, and provided that, in event the net proceeds from the sale of the cotton 'exceeded the above indebtedness, the excess shall be paid to first party.' By this instrument the debt was not extinguished, but it is clear Stoker was to be credited only with the amount of the net proceeds from the cotton. He retained an interest in the cotton to the extent, at least, of the amount it might bring over and above what he owed plaintiff. Such a clause is common to mortgages and deeds of trust. It is a strong indication that the instrument is intended as a mere security and not a sale. If it were an outright sale, there could be no reason for paying the surplus over and above the indebtedness to Stoker. Of course, if the debt had been extinguished by the transaction we should have an entirely different situation".

■ We believe the evidence and the law support the court's conclusion of the legal effect of the defendants' contract with Bloom that it constituted only a security device and did not convey unconditional title to the defendants.

■ Defendants also assign as error the court's failure to find that the recording of plaintiffs' mortgage should not be binding on defendants because seventeen days was an unreasonable period to wait to record the mortgage after its execution. Considering the fact that the mortgage was executed on New Year's Day followed by two week-ends before the date of the recording, the remaining time for filing by a nonresident bank, without knowledge of defendants' agreement with Bloom, was not,

in our opinion under all the circumstances, sufficiently long to invalidate the recording as a matter of law.

 Defendants further charge the court with error in failing to find that the plaintiffs were negligent in recovering the real market value of two trucks taken by them under their mortgage and to credit the mortgage indebtedness therewith. There was substantial evidence that plaintiffs sold a 1950 Chevrolet truck for $325, after spending $94.21 on repairs; that they left a 1954 International truck with Failing Drill with a sales and rental firm in Kansas City, with no offers, and later sold it at an auction sale for $5300, less commission of $250. Under the evidence the court committed no error in failing to find lack of diligence on the part of the plaintiffs in the sale of the equipment mentioned.

As noted, it is further urged by the plaintiffs that defendants' agreement with Bloom was in fact executed on January 4, 1959, rather than on the date shown—December 26, 1958. The court found that the instrument was executed by Bloom and Green on January 4, 1959. Defendant Storms testified that it was prepared and signed by all the parties in the office of the attorney who prepared it on December 26, 1958. Bloom testified that at that time he placed all of the copies of the agreement, unsigned, in his pocket for further consideration and that on January 4, 1959, he met Horace Green, partner of defendant Storms, at a point on the Missouri side of the Missouri-Kansas State Line and both signed and executed the agreement, thus fixing the execution later than that of the plaintiffs' mortgage not yet recorded. Prompt objection was made to such testimony on the ground that at the time of trial Green was deceased, citing Section 491.010 RSMo 1949, V.A.M.S. and the point was preserved for review.

Since, however, we have agreed with the trial court that defendants' unrecorded agreement with Bloom dated December 26, 1958, did not divest Bloom's title to the property involved, regardless of the date of its execution, but was merely a security device, and that the plaintiffs' duly recorded mortgage on the same property took precedence over such agreement, the issue as to whether defendants' agreement was executed December 26, 1958, or January 4, 1959, is moot and need not be determined. Of the $10,000 awarded plaintiffs by the judgment, the court correctly allocated $3870.05 to "Flat River insurance premiums" to be applied as a credit on any recovery in Suit No. 23,874, supra.

We find no error in the trial of this cause materially affecting the merits thereof. The judgment should be affirmed. The Special Commissioner so recommends.

The foregoing opinion of SAMUEL A. DEW, Special Commissioner, is adopted as the opinion of the Court. All concur.