**STATE of Missouri for the Use of FAGER AND FRIESEN INSURANCE AGENCY, Respondent,**

**v.**

**STORMS–GREEN CONSTRUCTION COMPANY et al., Appellants.**

**No. 23874.**

Kansas City Court of Appeals.

Missouri.

Oct. 5, 1964.

Donald B. Clark, Campbell & Clark, Kansas City, for appellants.

Robert D. Youle, Daniel M. Dibble, Lathrop, Righter, Gordon & Parker, Kansas City, for respondent.

SAMUEL A. DEW, Special Commissioner.

The plaintiff sued defendants on a contractor's surety bond to recover premiums on insurance policies issued in connection with a highway construction subcontract. Judgment was rendered for plaintiff for $6187.74. Defendants have appealed.

This case is one of three companion cases tried together although not consolidated, involving many of the same parties and issues and much of the same evidence growing out of the grading and preparation of a roadbed for Route #67 in St. Francois County, Missouri, known as the "Flat River job". The other two cases are: Kansas State Bank v. J. W. Storms et al., No. 23,-873, Mo.App., 382 S.W.2d 805 and Fager and Friesen v. J. W. Storms et al., No. 23,-872, Mo.App., 382 S.W.2d 801. Separate judgments were entered in the three cases, separate appeals taken therein, and a single transcript of record filed in this court. For a more general review of the background of the instant case, the case of Kansas State Bank v. Storms et al., supra, may be consulted.

The Fager and Friesen Insurance Company is a copartnership, composed of Emery E. Fager and Max J. Friesen, operating an insurance agency, and located in the Kansas State Bank at Overbrook, Kansas, of which they were also cashier and assistant cashier, respectively. For convenience we shall refer to the use plaintiffs as the plaintiffs, as did the trial court.

The Storms-Green Construction Company is also a partnership, and was composed of J. W. Storms and Harvey C. Green of Kansas City, Missouri, hereinafter referred to as Storms-Green. The Clark Construction Company is a corporation of St. Joseph, Missouri, referred to as the Clark Company. The defendant Travelers Indemnity Company is a corporation, to be referred to as Travelers. The Hartford Accident and Indemnity Company, a corporation, mentioned in evidence, will be designated as Hartford.

In November, 1957, Storms-Green and the Clark Company entered into a contract with the Missouri Highway Commission to construct and to prepare a roadbed for the highway above mentioned. As required by Sections 107.170 and 227.100(4) RSMo 1949, V.A.M.S., Storms-Green and the Clark Company, as principals, and defendant Travelers executed a penal bond in the sum of $1,588,667.28, payable to the State of Missouri, conditioned, among other things, upon the payment of all obligations of defendant Storms-Green and the Clark Company in connection with said construction work, including the payment for "all insurance premiums, both compensation and all other kinds of insurance on said work".

The defendants Storms-Green and the Clark Company divided the prime contract on the job, the former taking the roadbed construction part and the latter assuming the bridge work. Thereupon Storms-Green subcontracted the rock excavation to one Dale Bloom, a contractor specializing in such work and possessing machinery and equipment adequate for such purpose. Bloom thereupon moved his equipment onto the job site and began operations under his subcontract. Bloom himself was requir-

ed by law to carry insurance on the job to cover liability for workmen's compensation and other specified liabilities. The plaintiffs had, over the years, arranged for all of Bloom's insurance on his various construction contracts through Hartford, with which they had an agency contract. As usual, they arranged insurance for Bloom from Hartford on his "Flat River" job.

After about one year of operations under his Flat River subcontract, and due to various unfortunate circumstances, Bloom became insolvent when his job was not yet nearly completed. Because defendants Storms-Green and the Clark Company, as prime contractors on the job, were responsible for the entire contract, they executed an agreement with Bloom, dated December 26, 1958, whereby they assumed the uncompleted portion of his subcontract, employed him as a superintendent on the job, agreed to pay all his obligations incurred under his subcontract chargeable to the job, and, with the use of his machinery and equipment under certain conditions, to finish the construction project as provided in the prime contract. Bloom testified that he did not tell the plaintiffs that such arrangement had been made although he had previously told them of such plans to so handle the situation.

Bloom's past due account with the plaintiffs for insurance premiums in connection with his several contracts had reached the sum of $17,425.73, for which the plaintiffs had made demand without success. Of this amount plaintiffs claimed that $12,948.23 was applicable to Bloom's Flat River job. This allocation was disputed by the defendants.

Under the plaintiffs' agency agreement with Hartford and in accordance with the admitted custom and practice between insurance companies and their agents or brokers, the plaintiffs would solicit and submit to the company applications for insurance of the type desired which, if authorized by the insurance company, would be prepared, issued and delivered to the agent or broker upon his payment to the company of the premiums therefor, less commissions, and the agent or broker would then deliver the policy to the insured and charge the entire premium to the insured's account. Under this modus operandi, the plaintiffs, as of December 26, 1958, had paid to Hartford $12,948.23, less commissions, for premiums which, according to plaintiffs' evidence, applied on policies supplied to Bloom on his Flat River job, which balance was long past due and unpaid.

On January 1, 1959, Bloom executed and delivered to plaintiffs his note for $13,831.65, secured by a chattel mortgage on certain items of his road equipment referred to, which note and mortgage were the subjects of said cause of Fager et al. v. Storms et al., No. 23,872, Mo.App., 382 S.W.2d 801, above mentioned. It was stipulated by the parties in this cause that such note and mortgage were given "for the purpose of securing payment of insurance premiums then due and owing by Dale Bloom and advanced and paid by plaintiffs to the Hartford Accident and Indemnity Company". There was evidence that the amount of the note was a mere estimate and that future additions or deductions would be considered.

Pursuant to the new agreement between Bloom and the defendants Storms-Green and Clark Company for the assumption by defendants of Bloom's uncompleted subcontract he, as of January 1, 1959, ceased to be an independent contractor; his employees became defendants' employees, and the same road equipment remained and was used on the job. Defendants deny that any of the policies written for Bloom after January 1, 1959, were authorized, and he so testified. Plaintiffs' evidence tended to prove that not only were they not advised that Bloom and the prime contractors had made the arrangement for the latter to complete the subcontract but that in fact the location of the Bloom machinery remained unchanged; that a very small portion of Bloom's insurance was ever ordered to be canceled; that certain charges on Bloom's

premium account were retroactive as of January 1, 1959, because of the nature of the work under the subcontract. The court found on evidence adduced, that the correct balance due on Bloom's account for premiums for insurance on the Flat River job to be $12,948.23, less a credit of $3870.-05 from the judgment of the court in said cause of Fager et al. v. Storms et al., No. 23,872, 382 S.W.2d 801, plus interest to January 1, 1963, on premiums not included in the face of the note, applicable to the Flat River job, $716.63, making a total of $6187.74 due the plaintiffs in this case.

Defendants' first and principal point of error is, in effect, that the court erred in failing to find that the account which Bloom owed the plaintiffs was simply for money loaned to and advanced for Bloom and not for "insurance premiums" within the meaning of Section 107.170 RSMo 1949, as amended, V.A.M.S., and therefore plaintiffs were not beneficiaries under defendants' performance bond and have no cause of action under Section 522.300 RSMo 1949, V.A.M.S.

As stated, Section 107.170 makes it the duty of officials and other agents of the state or certain subdivisions thereof in making contracts for public work, to require the contractor to furnish bond such as we have referred to herein. The pertinent language of that Section secures payment of "all insurance premiums, both compensation, and all other kinds of insurance, on said work". Section 227.100 imposes the duty upon a contractor in the construction of a state highway to furnish such a bond to insure the fulfillment of his contract. In connection with public work, Section 522.300 gives the right to sue on such bond to persons "furnishing material or performing labor, either as an individual or as a subcontractor for any contractor", and to do so in the name of the state or subdivision thereof for his use and benefit.

The question whether a given claimant under the contractor's performance bond provided for by such statute is a proper beneficiary of such a bond has challenged the judicial acumen of this and other states. Berger Mfg. Co. v. Lloyd et al., 209 Mo. 681, 108 S.W. 52. The case of Audrain County ex rel. and to Use of First National Bank v. Walker et al., 236 Mo. App. 627, 155 S.W.2d 251, heavily relied on by defendants in this appeal, in its able and exhaustive main opinion and two discerning opinions concurring therewith, is an example of the meticulous consideration that must be given to the pertinent facts and statutory provisions involved in order properly to determine the right of a claimant to sue on such a bond. We note that case more fully hereinafter.

The plaintiffs vigorously argue that under the circumstances in evidence they "furnished insurance" to defendants' subcontractor on the Flat River job within the meaning of the foregoing statutes. They maintain that their claim is not merely a case of money loaned to or advanced for Bloom, but it was insurance that plaintiffs procured for Bloom at his request for the highway job and for which they paid Hartford the premiums according to custom and later charged to Bloom's account.

Defendants claim that under the facts in this case plaintiffs had no authority to "issue" insurance policies; that plaintiffs guaranteed no one against loss under any specified risk; that such protection can only be furnished by someone authorized by law to issue insurance contracts and guarantee against certain hazards; that policies handled by the plaintiffs were executed at the home office of Hartford and mailed to plaintiffs to be countersigned and delivered to Bloom; that plaintiffs were not parties to such contracts and plaintiffs' obligations to Hartford for any premiums could have been eliminated by 30 days' notice of cancellation. They say that the insurance was "furnished" by Hartford, which has been fully paid and what remains is simply a claim by the plaintiffs for funds loaned to Bloom. The contractor's bond, they insist, does not extend to include a guaranty of repayment of such loans.

The defendants, by way of illustration, call attention to the fact that if Bloom had requested cancellation of any of his policies and had demanded the unearned premiums to which he would be entitled, Hartford could not, without Bloom's consent, comply by paying the unearned premiums to the plaintiffs; that the company could not refuse such refunds to Bloom on the ground of nonpayment by Bloom to the company. In other words, defendants' theory is that, as between Bloom and Hartford, the "insurance premiums" had been paid, the policies remained in force, and the company had no claim against Bloom. They suggest further that the taking of Bloom's note and chattel mortgage showed that the amount was a loan transaction. Plaintiffs' claim, they say, is an obligation between Bloom and the plaintiffs in which Hartford had no interest because its premiums had been fully paid. To prevail, they say, the plaintiffs must show that they "furnished insurance" to Bloom on the job.

The general rule stated in 164 A.L.R. 783, is cited by defendants and reads as follows:

"The general rule that a claim for money loaned or advanced to a building or construction contractor is not within the coverage of the ordinary form of contractor's bond conditioned for the performance of contract and the payment of all claims for labor and material, even though the borrowed money has been wholly applied to the payment of the cost of labor and material actually going into the construction project, is supported by several later cases. Citing United States (for the) use (and Benefit) of Dorfman v. Standard Surety and C. Co., (1941; DC) (37 F.Supp. 323) and other cases".

Defendants assert that such rule prevails in Missouri; and they rely heavily on the case of Audrain County ex rel. First National Bank of Mexico v. Walker et al., Mo. App., 155 S.W.2d 251, supra. In that case Audrain County had entered into a contract with one Walker, a contractor, to build a

nurses' home for that county. The contractor, before entering upon the performance of the contract, made and filed a performance bond, conditioned that the contractor would faithfully and properly perform the building contract. Walker, not being able to finance the cost of labor and materials on the job, arranged with the bank to supply him with funds therefor. Pursuant to that arrangement the bank advanced to Walker the total sum of $3094.46 in cash, which Walker used for the payment of the cost of labor and materials on the job and which was not repaid to the bank. The bank sued on the performance bond for its claim for money so advanced and used. Among the defenses to the action it was contended and the appellate court held, that the bank was not such a person designated in the statute as would be entitled to sue on such a bond and that the bank did not furnish any of the items prescribed in the law. The judgment in favor of the bank was reversed on appeal upon the principle that " * * * [a] bank furnishing money or funds to a building contractor with which for him to perform, or with which he does perform such building contract is not within the contemplation of the Legislature as shown by the statutory provisions" (l. c. 255 of 155 S.W.2d).

The appellate court further said in the Audrain County case, supra, page 254 of 155 S.W.2d:

"The source of the funds with which performance of the contract was made neither creates nor destroys liability on the bond. The contract was performed just the same. In such situation, if reimbursement to the bank is to be made, it must be from some source other than the bond given only to protect fulfillment or performance of a contract not pleaded or shown to have been broken, but on the contrary both pleaded and shown to have been performed with funds furnished by the bank. * * * Payment to a person furnishing money, regardless of the purpose for which such money was

used, was not a requirement of performance of such contract".

The court also said (page 256 of 155 S.W. 2d):

"It does not require construction or sophistry to see that in this instance the bare fact that the bank supplied Walker with funds with which to perform his contract, that such act on the part of the bank was not included in the provisions of the terms of the bond or of the statute in conformity with which such bond was given. * * * it seems perfectly clear that the Legislature and the parties to this bond had only in mind the protection, primarily at least, of the persons performing work or supplying the items and articles set forth in both the statute and the bond here."

In the case of Camdenton Consolidated School District No. 6 of Camden County ex rel. W. H. Powell Lumber Co. v. New York Casualty Co., 340 Mo. 1070, 104 S.W. 2d 319, a contractor had failed to pay the lumber company for material furnished for and used in a school building constructed by the contractor. At the outset Dawson, the contractor, had approached the lumber company with the suggestion that he might be awarded the contract if he could get financial backing. The representative of the lumber company had told him to "Go ahead and get the contract and he would take care of my payroll". Dawson failed to complete the building. Action was brought on the contractor's bond to recover the amount owing the lumber company. It had been agreed between the lumber company and Dawson that out of the payments made to him by the school board he would repay the lumber company for its advancements for the payroll. In addition to its lumber account, the lumber company had advanced to Dawson $4593.94 for his payroll, which was so used. Out of a payment of $5148.60 so made by Dawson to the lumber company, that company credited the full amount of the cash account to that account, and only $106.52 to

the material account against Dawson. It was urged by the surety company that its equitable right to the extinguishment of its liability by the application of such cash payment by the contractor to the material account was superior to the right of the lumber company with knowledge of the source of the funds for such payment to apply most of same to the satisfaction of its cash account instead of applying it to the material account. The Supreme Court held, however, that under the facts the lumber company's equitable right to the funds so repaid was superior to that of the surety, and sustained the judgment for the plaintiff except as to damages for vexatious delay and attorneys' fees. The court further ruled that inasmuch as Dawson owed the lumber company for both accounts and did not direct the payment to be made to one or the other, the lumber company had a right to credit the accounts as it elected.

In the case of School District No. 18 of Caruthersville et al. v. McClure et al., Mo., 224 S.W. 831 (1920), a school district took over the completion of a school building which its contractor had not completed, and in doing so, expended a larger sum than the contract price. One item was $800 borrowed from a bank and used to meet the payrolls. The court said (page 834 of 224 S.W.):

"The evidence tends to show that this money (borrowed from the bank) was used to pay for labor done upon this school building. It was gotten for that purpose, and whilst notes were given with the order aforesaid as collateral, we are inclined to the view that this item * * * was properly chargeable to the bond in suit. The money was actually paid for labor done upon the school building".

It is apparent that the qualifications of a person to sue on a contractor's performance bond given in connection with public work must be determined on the particular facts and statutory requirements involved in the particular case. If the statutory specifica-

tion of the items protected by such bonds in Missouri be persuasive or determinative of the issue in early cases it must be noted that the amendment of Section 107.170 in Session Acts of 1933, p. 179, specifically added the present words: " * * * and all insurance premiums, both compensation, and all other kinds of insurance, on said work * * * ". It is conceded in the present case that such insurance as such contractors are required by law to carry on such public work, must now be considered, for the purposes of the above statute, as material for the job.

The defendants and the plaintiffs, as well as the trial court, construe the language of Section 107.170 to extend the protection of the contractor's bond to one "furnishing insurance" on the work, but defendants contend that such qualification is not met by an agent or broker advancing the premiums for such insurance. The plaintiffs' position is that one who procures the required policies, pays the premiums therefor and delivers them to the contractor under the circumstances shown in evidence, is, within the meaning of that statute, "furnishing insurance."

We think the purposes and intent of the quoted language of the statute in question were and are, primarily, to make more nearly certain the contractor's compliance with the statutory insurance requirements on public work (Sec. 287.280 RSMo 1959, as amended, V.A.M.S.), and to make more secure the payment of the cost thereof, and, in so doing, to extend the protection of the contractor's bond to one who, as insurer or authorized agent, has supplied and delivered to the contractor the insurance requested and required, in consideration of the payment to such person by the contractor of the stipulated premium. The fact is that by securing the "insurance premiums" the bond would thereby secure the "furnishing" of insurance, which is the real objective of the provision.

We think there is a substantial distinction between the case of a mere cash loan, on the one hand, to a contractor on a public job for the purpose of enabling him to meet a specific obligation imposed upon him by statute and so used by him, and, on the other hand, the case of one who, at the request of the contractor, procures for him the particular type of material or article specified and required by law, paying the initial and periodic charges therefor according to prevailing custom, and, upon delivery of the same to the contractor, charging to his account the cost so paid, thus enabling the contractor to comply with the statutory requirement on such jobs. The desired effect of the statute is to facilitate the construction of public work and to furnish to those supplying labor and material to such construction the same measure of protection afforded by the mechanics' lien law where the work is not public. State ex rel. Francesconi et al. v. Ætna Casualty & Surety Co., Mo.App., 350 S.W.2d 418. It was the further evident purpose of the statute to make the furnishing of insurance of the various types required, itself an item of contribution to the project, to be specifically included within the protection of the contractor's performance bond.

If such bond does not extend its protection to an insurance agent who performs the services and supplies the required insurance policies under the circumstances here shown in evidence, and pays, upon the issue of the policies or renewal thereof, the initial or periodic premiums therefor, as required by the insurer and according to custom, then such contractor, by failing to pay the agent such premium account could, nevertheless, continue compliance with the statute as respects insurance on public work, and enjoy the protection of such policies, at the expense of such person so procuring the necessary insurance. To such a person the only immediate remedy would be involuntary cancellation of his customer's policies, which would place the contractor in a position of noncompliance with the statutory insurance requirements. If such agent refrained from such drastic remedy as involuntary cancellation of the policies, then the contractor's continued compliance with the statute respecting insurance would

be dependent upon the agent's voluntary credit. Such construction, in our opinion, is incompatible with the spirit, purpose and intent of the statute in question. It is our conclusion that the plaintiffs are proper beneficiaries under the bond sued upon.

The defendants next contend that the court erred in failing to find that the items of plaintiffs' account against Bloom for insurance premiums after January 1, 1959, were for his personal insurance, or insurance against no existing hazards at all, or were issued without authorization by Bloom, or were duplicates of insurance already covered by defendants' insurance, and that plaintiffs have no right to reimbursement for the premiums therefor advanced by them. The court's findings on these items were supported by substantial evidence and we deem the balance found by the court as due the plaintiffs to be correct.

We find no error in the trial of the case affecting the merits and rule that the judgment be affirmed.

The foregoing opinion of SAMUEL A. DEW, Special Commissioner, is adopted as the opinion of the Court and the judgment is hereby affirmed. All concur.