KANSAS STATE BANK, a Corporation, Respondent,

v.

J. W. STORMS and Storms-Green Construction Company, Appellants.

No. 23873.

Kansas City Court of Appeals.

Missouri.

Oct. 5, 1964.

**806**

Donald B. Clark, Campbell & Clark, Kansas City, for appellants.

Robert D. Youle, Daniel M. Dibble, Lathrop, Righter, Gordon & Parker, Kansas City, for respondent.

SAMUEL A. DEW, Special Commissioner.

Plaintiff brought this action on alternative counts of conversion, money had and received and for an accounting. The suit involves the right to proceeds of a sale by defendants of two Euclid trucks included in a chattel mortgage held by the plaintiff. In a jury waived trial the plaintiff recovered a judgment for $7,000 of said proceeds. The counterclaim of defendant J. W. Storms was denied. Defendants have appealed.

Because several of the parties, issues, facts and much of the evidence appearing in this case appear also in two companion cases, the three actions were tried together, separate judgments were rendered, separate appeals taken and a single transcript of the evidence was filed in this court. The other companion cases are Fager and Friesen Insurance Agency, a partnership, v. J. W. Storms et al., No. 23,872, Mo.App., 382 S.W.2d 801, and State ex rel. Fager and Friesen Insurance Agency v. Storms-Green Construction Company et al., No. 23,874, Mo.App., 382 S.W.2d 812. The separate appeals in those cases will be separately determined by this court.

The parties in the instant case filed a limited stipulation of facts in the trial court. Such of these as we deem essential, along with such supplementary facts in evidence that may be material and undisputed will be stated herein. Additional facts applicable to this case and which are disputed will be referred to where considered proper. The court's finding of facts will be cited where necessary.

█ This being a case tried without a jury, it is reviewed upon appeal as a suit in equity, with due deference to the trial court respecting the credibility of the witnesses. Rule 73.01(d), V.A.M.R. In such a case the Supreme Court has said:

"We review the case upon both the law and the evidence as in suits of an

equitable nature, § 510.310(4), RSMo 1959, V.A.M.S., de novo on the whole record, making our own findings of fact, drawing our own conclusions of law, and rendering or directing the rendition of such judgment as equity and justice may require". Carrier Corporation v. Royale Investment Co., Mo., 366 S.W.2d 346, 348.

The controversy between the parties in this case arose out of the tragic financial failure of one Dale Bloom. At all times pertinent to this case he was and for a long time had been engaged in the business of rock excavation conducted by and with large and special machinery owned by him and designed for such use, including the two Euclid trucks above mentioned.

The defendants were engaged under a general contract with the Missouri Highway Commission for the grading and preparation of a roadbed as a part of the improvement of Route #67 in St. Francois County, Missouri, referred to as the "Flat River job". On November 23, 1957, defendants entered into a subcontract with Bloom for that part of the job that required the excavation and removal of rock from the roadbed. Thereupon Bloom brought upon the job site his heavy road machinery referred to which he used in his operations under his subcontract.

Delayed by several months of unfavorable weather conditions, hampered by unexpected rock structure of the character that requires unusual time, labor and expense in its removal, and impeded by consequent breakdowns of vital equipment, Bloom found himself by December, 1958, in a state of insolvency, with his job far from completion. As the prime contractors on the project, the defendants had the grave responsibility to the State of Missouri and to their sureties of completing the entire operations to which they had agreed. After extended conferences with Bloom, they considered the proposition of cancelling Bloom's subcontract, assuming the remain-

der of the work thereunder, paying his accrued obligations on the job, employing him as superintendent on the project and continuing the use of his equipment on the job site. While considering such solution of the Bloom subcontract, defendant Storms sought information as to Bloom's financial obligations. Defendants knew that Bloom had long been a customer of the plaintiff bank in his home town of Overbrook, Kansas, and had procured his insurance policies through officials of that bank as agents. While Bloom was operating under his subcontract, defendants had frequently remitted to the plaintiff bank to the credit of Bloom for the payment of his accompanying payroll lists. Defendant J. W. Storms therefore wrote the following letter on December 19, 1958:

"Mr. Emery Fager
Kansas State Bank
Overbrook, Kansas

"Dear Sir:

"As you know we have a contract in St. Francois County, on which Dale Bloom is a subcontractor. We are reviewing some of the financial aspects of our relationship and we would appreciate it if you would verify the following information which Mr. Bloom has furnished us with regard to loans owing your bank.
"2—D8 Caterpillar Dozers s/n 2E1016, s/n 2U2206
"1—Failing Rotary Drill mounted on International Truck, CPF 99633
        Outstanding    $15,000.00
"Would you please advise us the terms of payment on the above?

                Yours very truly,

                STORMS-GREEN CON-
                    STRUCTION CO.

        (S)    J. W. Storms
                J. W. Storms
JWS/B."

Plaintiff, on December 24, 1958, replied as follows:

"Dec. 24, 1958

"Mr. J. W. Storms
Kansas City, Mo.

"Dear Mr. Storms:

"In reply to your letter regarding our loans to Mr. Bloom, I wish to say that the amount of the loan is correct and the security is also as stated, with some addition.

"We have had a mortgage on 2 Euclids but on an oversight, Dale got those included with some loans at Southgate State Bank at Prairie Village. *So I have additional security on these two Euclids subject to $10M at the Southgate State Bank. The amount of our loan here is $15M.*

"We have taken care of Dale on his Comp and Gen Liab insurance which has accumulated to slightly over $10M, which is putting us a little bind. But I have dealt with Dale so long, I want to help him thru this difficulty, as all of our dealings have been satisfactory. We have always found Dale to be one of the hardest working fellows in the business and has always been honest and square in his dealings here. Would there be any way he could squeeze any money out to pay on some insurance before Jan 1?

"You asked about the terms of payment on his note here and frankly I have agreed to go along with Dale until the job down there in Flat River is buttoned up. It has been impossible for him to keep on any payment schedule so we are just riding to the completion of the job and at that time will have to take another look at the picture.

"Best regards to you.

Cordially yours

(S) Emery E. Fager".

(Italics ours.)

Investigation disclosed that Bloom's note held by plaintiff and chattel mortgage se-

curing it were dated December 31, 1957, and covered certain of Bloom's road machinery, including the two Euclid trucks above mentioned, and two Caterpillar tractors; that the mortgage was recorded in Douglas County, Kansas, of which Bloom was a resident, January 6, 1958, and in St. Francois County, Missouri, where the chattels were located, on August 21, 1958. The note so held by the plaintiff had been in default since March, 1958, the due date of the first installment. Bloom was also greatly in debt for accumulated insurance premiums due officials of the plaintiff bank, Emery E. Fager and Max J. Friesen, cashier and assistant cashier, respectively, of the plaintiff bank, who conducted an insurance agency as partners and agents located in the premises of the bank. The two Caterpillar tractors had been surrendered to the plaintiff and sold by it for credit on the Bloom note and mortgage.

Southgate State Bank of Prairie Village, Kansas, referred to in plaintiff's letter aforementioned as holding a later note and second chattel mortgage from Bloom secured by the same Euclid trucks in question, and also in default, had demanded the Euclid trucks of Bloom and had threatened to seize them. It was learned that the Southgate State Bank on September 20, 1958, had, in fact, loaned Bloom $10,000 for which he made a note for $10,613.10, inclusive of interest to maturity and insurance premiums, secured by chattel mortgage on the two Euclid trucks previously mortgaged to the plaintiff. The Southgate State Bank's mortgage was recorded September 25, 1958 in Osage County, Kansas, only, and not in St. Francois County, Missouri, where the property was located. The Southgate State Bank then remitted $10,000 to the plaintiff bank as the actual proceeds of the Southgate State Bank's loan and which, according to plaintiff's evidence, was deposited by the plaintiff on Bloom's instructions to Bloom's checking account, and by him later checked upon until its exhaustion. No part of this deposit was appropriated by the plaintiff

nor credited to Bloom's defaulted note and first mortgage held by it.

Having received plaintiff's letter above quoted, and Southgate State Bank threatening to seize the Euclid trucks which were vital to the completion of the highway contract, defendants then entered into an agreement with Bloom to cancel his subcontract, to take over the uncompleted part of the work covered by it, to assume his obligations on the job, to employ him as a superintendent there and to use his road machinery, on certain conditions, including the Euclid trucks, in the completion of the defendants' prime contract. Thereupon defendant Storms purchased from the Southgate State Bank Bloom's defaulted note and second mortgage held by it, for the face value thereof, $10,613.10. That note provided for 10 percent interest after maturity and no payments had been made by Bloom. The chattel mortgage securing the note provided, among other things, for the inclusion of the interest and for the costs and expenses of taking and sale of the Euclid trucks upon seizure after default, the same, as stated, being the trucks previously mortgaged to the plaintiff heretofore described. Subsequently, on May 13, 1960, after the completion of defendants' prime contract, defendant Storms sold the two Euclid trucks for $17,000, conceded to be the fair market value thereof.

Originally, the plaintiff sought, by its pleadings, to establish priority and right, by reason of its prior note and first mortgage, to the entire $17,000 proceeds of defendants' sale of the Euclid trucks. In said four counts it based its claim on alleged conversion, money had and received and for an accounting.

The defendants, denying that plaintiff had a prior right to the proceeds of the sale of the Euclid trucks, pleaded a complete waiver by the plaintiff of such priority by plaintiff's letter above quoted, upon which defendants had allegedly relied in the purchase of the Southgate note and mortgage, then in default. Furthermore, the answer pleaded defendants' right to interest accrued on the Southgate note, and various expenses incurred in the taking possession of, removing and sale of the Euclid trucks. There was substantial evidence that the defendants expended the total sum of $1092.56, consisting of $826.70 for repairs of the tires on all four wheels of both tractors; $65.86 for new parts for an oil kit on a Deisel engine in one of the trucks which was badly leaking oil; $100.00 for labor to install the same; and $100.00 for labor in construction of a ramp for loading the trucks at the river dock for delivery to the purchaser; that interest in the amount of $1680.55 had accrued on the note after maturity to the date of sale; that the total of such items, added to the principal of the note, constituted defendants' claim of $13,386.11 out of the $17,000 proceeds of sale of the trucks, leaving $3613.89 due plaintiff, if it were entitled to any portion of such proceeds.

The answer further averred that by agreement among the plaintiff, the Southgate State Bank and Bloom, the proceeds of the note then held by the Southgate State Bank, considered as $10,000, were to be paid and were paid to the plaintiff, which failed to credit the same to the prior Bloom note in its hands; that plaintiff also had failed to credit the Bloom note held by it with the proceeds of the sale of the two Caterpillar tractors and other items of the Bloom mortgage held by it which plaintiff had already seized and sold; that plaintiff's claim under the Bloom mortgage held by it had thus been satisfied. There was evidence, however, that plaintiff had seized and sold the Caterpillar tractors, both old models, one at public auction for $2700, and one at private sale for $4500, after many attempts to get higher bids and earlier sales.

Defendant Storms filed a counterclaim to recover alleged advancements to Bloom through the plaintiff bank, claiming such deposits were diverted by plaintiff to its own use, thereby compelling defendants to make further advancements for taxes, fed-

eral insurance, withholding taxes, unemployment compensation, all in the total sum of $3,973.03.

However, for the purposes of this appeal, the record shows that the trial court ruled, in part, that the letter written by the plaintiff to defendants on December 24, 1958, quoted and italicized hereinabove, relinquished to the defendants, as holders for value of the Bloom note and second mortgage purchased from Southgate, the prior right to the first $10,000 of the proceeds of any sale of the two Euclid trucks described in said second mortgage, "but did not give defendants any security lien thereon or right to possession"; that such letter did not, and was not intended to, subordinate plaintiff's security interest and possessory right to said trucks and plaintiff's right to the proceeds of the sale thereof, or to the accrued interest or insurance premiums covered by the Southgate note and second mortgage, or to the expenses of taking possession of or in selling the trucks. The court further found that defendants knew of plaintiff's chattel mortgage and right of possession of the trucks " * * * so that to the extent of the excess of the reasonable market value of said two Euclid trucks as of October 13, 1959, defendants and particularly defendant Storms, converted the property to which plaintiff had an immediate possessory right; that defendants converted $7,000 of plaintiff's security property to their own use and benefit * * * ; that, alternatively, * * * plaintiff is entitled to recover from defendants under Count III of its petition for money had and received by defendants for the use and benefit of plaintiff, the sum of $7,000.00".

The court further found that the plaintiff had made bona fide sale of the Caterpillar tractors and had given proper credit therefor on the Bloom note held by it, with proper reductions for expenses and costs ($5,826.32); that the balance due plaintiff on such note with interest was $14,490.81; that plaintiff did not receive in its own right the $10,000 proceeds of the Bloom-Southgate loan, but received it only in its capacity as a bank and had deposited it to Bloom's account; that the evidence did not establish that plaintiff should have earmarked any of Bloom's credits or deposits for payroll or tax accounts nor that any of his accounts should have been segregated without his consent. Moreover, the court held that defendants had agreed to pay the withholding tax claimed; that plaintiff was entitled to judgment on defendant Storms's counterclaim. Therefore, the court denied the counterclaim.

On this appeal plaintiff now concedes that its letter to defendant Storms of December 24, 1958, subjected $10,000 and that exact amount only, of the proceeds of the sale of the Euclid trucks under the Southgate note and second mortgage to the holder thereof, although it denies a complete subordination of its prior rights of possession and security. Plaintiff says in its brief that the letter, written by a layman, "merely agreed that, to protect Bloom for his oversight in double mortgaging the Euclids when it recovered and sold the security the Southgate note holders could have $10,-000 of the proceeds". In effect the writer of the letter, cashier of the plaintiff bank, had so testified that such was his intent. He stated that he learned of the Southgate second mortgage from records of the Register of Deeds; that he was told by Bloom by telephone that the $10,000 would be sent to plaintiff to be deposited in his account; that he did so deposit it.

Plaintiff asserts that the writer of its waiver letter did not know that the Southgate note was for more than $10,000 principal (including interest to maturity), nor that it bore interest after maturity, or covered costs and expenses of possession and sale of the security after default; and it claims that the limitation to $10,000 represented the extent of plaintiff's knowledge of Bloom's obligations and the extent to which it was willing to protect him.

Defendants' contention is that the court erred in awarding the plaintiff $7,000 of the proceeds of the sale of the Euclid trucks

by defendants, and erred when it "failed to allow defendants for accrued interest and expenses of sale", upon default as provided in the Southgate note and second mortgage. They argue that in plaintiff's letter to defendants, its reference of "10M" to the note and mortgage held by Southgate State Bank was merely for the purpose of identification; that the use of the designation "10M at the Southgate Bank" was not intended nor understood to specify the exact amount of the plaintiff's relinquishment, but rather as a mere reference to the particular loan to which the subordination referred and that such statement could reasonably be so construed and could be and was relied upon by the defendants, as shown by their evidence.

The plaintiff cites the language of Orr v. Mutual Life Ins. Co. (8th Cir. 1933) 64 F.2d 561, 565:

"One who waives a right is under no legal obligation so to do and he may determine to what extent or in what respect he will do so and if such extent or respect clearly appears neither can be expanded beyond such intention. Nor is it of legal consequence why he placed limitations upon the waiver provided such limitations clearly appear".

See also 10 Am.Jur., Chattel Mortgages, Sec. 207.

Further elements of waiver are reviewed in Springfield Gas & Electric Co. v. Southern Surety Co., Mo.App., 250 S.W. 78, 81, citing as an illustration of waiver that when " 'one in possession of any right, whether conferred by law or by contract, and with full information of the material facts, does or forbears the doing of some things inconsistent with the existence of the right or his intention to rely upon it; thereupon he is said to have waived it, and he is precluded from claiming anything by reason of it afterward.' (citations) * * *. A consideration which is necessary to support a contract is unnecessary to support a waiver.

A waiver may even take place in consequence of laches merely or in consequence of acting inconsistently with the idea of insisting upon the right which is waived, and may be shown by conduct as well as by express words. (citations). * * *. Waiver is ordinarily a question of fact, and depends largely upon the intention of the party. That intention, however, is not the secret intention of the party, but is the intention which is manifested by his conduct or his words in relation to the matter involved. (citations)". Ziervogle v. Royal Packing Co., Mo.App., 225 S.W.2d 798, 803; Hayes v. Manning, 263 Mo. 1, 172 S.W. 897; Dunn v. Pickard, Mo.App., 284 S.W.2d 6, 9; Pennsylvania Casualty Co. v. Suburban Service Bus Co., Mo.App., 211 S.W.2d 524.

Applying the undisputed facts to the law as we have found it, we turn our attention to the extent of the plaintiff's admitted waiver. That it *did* extend at least to the amount of $10,000 is now conceded.

■ The writer of the plaintiff's waiver letter was an experienced banker; he was in fact the cashier of the plaintiff bank. He long had known Dale Bloom as a customer and substantial depositor in that bank. He was familiar with Bloom's $15,000 note and chattel mortgage then in default, held by the plaintiff bank of which he was cashier. He knew of the large insurance account past due and owing to him and his assistant cashier from Bloom; he knew of Bloom's financial difficulties in the road contract. He knew of and mentioned Bloom's "other loans" from the Southgate State Bank. He had been notified by Bloom from the Southgate State Bank that $10,000 would be sent him for deposit in Bloom's account at the plaintiff bank. He had deposited the same as instructed by Bloom. He had made plans to "go along with Dale until the job down there in Flat River is buttoned up", and that "we are just riding to the completion of the job and at that time will have to take another look at the picture". He knew that the Bloom note for $15,000 in his own bank provided for interest to maturity

and 10 percent after maturity, and for costs and expenses upon possession taken and sale thereunder for default. In his letter he referred to that note held by his own bank as a note for "$15M". In the same paragraph he referred to the note and mortgage purchased by defendants as a note for "10M". It is a matter of common knowledge that bank loans represented by notes secured by chattel mortgages almost universally, if not always, draw interest and generally provide for expenses of possession and costs of sale.

The overwhelming evidence forces the conclusion that the plaintiff's writer of the waiver letter to the defendant on December 24, 1958, with actual or implied knowledge of the full terms of the note and mortgage held by the Southgate State Bank, referred to by him, intended to subordinate plaintiff's prior note and first mortgage on the Euclid trucks to Bloom's later note and second mortgage to the Southgate State Bank to the extent of $10,000 of its principal, plus interest and expenses therein specified, and that the expression "10M" was not intended to limit such waiver to the exact sum of $10,000, but generally as a reference to or identification of the particular loan referred to. The court was therefore in error in ruling that the letter waived plaintiff's right to $10,000 only of the proceeds of the sale of the two Euclid trucks, and in ruling that it did not include interest, costs and expenses of sale provided for in the Southgate note and mortgage.

The evidence is sufficient to support the court's ruling on the deductions claimed by defendants to reduce the plaintiff's balance on its Bloom account. Likewise we believe the proof justifies the court's determination of defendant Storms's counterclaim.

The judgment should be reversed and the cause remanded with directions to enter judgment for the plaintiff on its petition for $3613.89, with interest at 10 percent per annum from May 13, 1960, and for the plaintiff on the counterclaim of defendant J. W. Storms. The costs to be charged to the plaintiff. The Special Commissioner so recommends.

The foregoing opinion of SAMUEL A. DEW, Special Commissioner, is adopted as the opinion of the Court.

All concur.